**SICARD, Appellant,**

v.

**UNIVERSITY OF DAYTON et al., Appellees.**

[Cite as *Sicard v. Univ. of Dayton* (1995), 104 Ohio App.3d 27.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. CA 14977.

Decided May 12, 1995.

*Alvarene N. Owens Co., L.P.A.,* and *Alvarene N. Owens,* for appellant.

*Bieser, Greer & Landis* and *James H. Greer,* for appellees.

---

GRADY, Judge.

Plaintiff, Alfred M. Sicard, appeals from a summary judgment dismissing his personal injury claim against the University of Dayton and Dave Bollwinkel, who is employed by the university in its weight-lifting program for student athletes.

Sicard was a student of the University of Dayton and a scholarship player on the university's basketball team. He was required by the university to lift weights to improve his prowess as a player. Sicard had lifted weights for several years and was experienced in that activity.

When lifting extremely heavy weights to a position above them, lifters are assisted by persons called "spotters," who help the lifter to move the weight from its stationary position and to return it to that position safely. Spotters also stand

ready during the lift to protect the lifter from a falling weight should his strength fail to maintain the burden.

On October 4, 1992, plaintiff Sicard was lifting weights at the university's gym. Sicard claims that Bollwinkel agreed to act as a spotter for Sicard while Sicard lifted a three-hundred-sixty-five-pound weight off a bar above a bench on which he was lying. Two others, Alex Robinson and Ray Springer, also agreed to spot for Sicard. Sicard lifted the weight from the bar, but his strength failed and the weight fell toward him. Robinson and Springer grabbed the middle and one end of the weight but were unable to stop it from falling on Sicard. Bollwinkel did not assist them or see the weight fall because he had turned away to speak to another person. Sicard suffered a ruptured pectoral muscle when the weight struck his left shoulder.

Sicard brought an action against the university and Bollwinkel for his injuries. His complaint alleged that his injuries proximately resulted from reckless and wanton misconduct on the part of Bollwinkel. The defendants moved for summary judgment, arguing that any breach of duty on the part of Bollwinkel was in the nature of negligence, at most. The trial court granted the motion and entered judgment for the defendants. Sicard filed a timely notice of appeal.

Sicard presents three assignments of error on appeal. His second and third assignments argue that whether Bollwinkel acted as a spotter and whether he was acting within the course of his employment are genuine issues of material fact remaining for determination. However, the summary judgment was not determined by those issues. Rather, it appears that the trial court simply found that Bollwinkel's acts or omissions, as demonstrated by the record, could not constitute reckless or wanton misconduct, and it granted summary judgment on that basis. That finding is the subject of Sicard's first assignment of error, in which he argues that genuine issues of material fact remain for determination with respect to whether Bollwinkel's acts or omissions constitute reckless or wanton misconduct. We agree, and will reverse the judgment of the trial court and remand for further proceedings.

■ It is undisputed that Sicard was engaged in a recreational activity when he was injured.

"Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d." *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, syllabus.

■ An act is intentional when " 'the actor desires to cause consequences of his act, or * * * he believes that the consequences are substantially certain to

result from it.'" *Id.* at 96, 559 N.E.2d at 700, fn. 2, quoting 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A.

"'The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'" *Id.*, quoting Restatement, at 587, Section 500.

Plaintiff Sicard does not argue that Bollwinkel's acts were intentional under the foregoing standard, that is, that Bollwinkel desired to injure him. Rather, Sicard argues that Bollwinkel's acts were reckless, and that whether they were reckless is a genuine issue of material fact remaining for determination.

What constitutes an unreasonable risk of physical harm under the circumstances of a certain sporting or recreational activity must be decided with reference to the rules and customs that shape the participant's ideas of reasonable conduct in the course of a game. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705. Participants in contact sports owe a lesser duty to each other than do those involved in a noncontact sport. *Id.*

"The Restatement of Torts 2d supports the view that different standards of care should apply to those who inflict injuries in the course of a game as opposed to those who inflict injuries under ordinary circumstances: 'Taking part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages. Participating in such a game does not manifest consent to contacts which are prohibited by rules or usages of the game if such rules or usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill. * * *' 1 Restatement of the Law 2d, Torts (1965) 86, Section 50, Comment *b*. See *Kabella v. Bouschelle* (1983), 100 N.M. 461, 463, 672 P.2d 290, 292." *Id.* at 105, 559 N.E.2d at 708.

Weight lifting is not a contact sport; weight lifters compete against the limits of their own strength and skill, not against each other. They obtain the assistance of spotters to help them lift a substantial weight and to avoid an injury that failure to perform the lift successfully may entail. Spotters are considered participants in the lifting activity, according to Sicard, who testified that "they

should follow the lift so [*sic*] almost like reenacting it from where they are standing." [1]

■ Participation in the sport of weight lifting manifests a willingness to submit to injuries from stress and strain entailed in lifting very heavy objects. Participation in weight lifting does not manifest a willingness to submit to injury from falling weights. The rules of weight lifting allow for the assistance of spotters to avoid such injuries, not merely to secure the better performance of a lift as a test of the weight lifter's strength and skill. A spotter who intentionally fails to provide the assistance necessary to avoid injuries from falling weights may be found to have engaged in a reckless act or omission if he knows or should know that the failure creates an unreasonable risk of physical harm to the weight lifter.

■ There is not much dispute about the facts of what happened here, except whether Bollwinkel agreed to act as a spotter for Sicard during his lift. Sicard and Alex Robinson say that he did. Bollwinkel denies that he did. We may not resolve that dispute on our own views concerning who is more credible. Issues of credibility must be resolved against the party who moves for summary judgment, because the party against whom the motion is made is entitled to have all the evidence construed most strongly in his favor.

■ There is evidence that defendant Bollwinkel was employed by the University of Dayton in its weight-lifting program for student athletes, including Sicard. There is evidence that Bollwinkel was present on the date alleged when Sicard attempted to lift a three-hundred-sixty-five-pound weight above his head. There is evidence that Bollwinkel agreed to act as a spotter for Sicard. There is evidence that Bollwinkel did not act as a spotter for Sicard. There is evidence that Sicard's injuries proximately resulted from a fall of the weight onto his body. A reasonable mind could conclude that had Bollwinkel performed as Sicard claims he agreed to, Bollwinkel could have prevented the injuries that Sicard suffered. A reasonable mind could also conclude that, if Sicard is believed, Bollwinkel's acts and omissions were reckless because they created an unreasonable risk of physical harm to Sicard, one substantially greater than that necessary to make his conduct merely negligent, because of the extremely heavy weight involved and Sicard's vulnerability to serious injury should Bollwinkel fail to perform as a spotter for him.

---

1. The depositions of plaintiff Sicard and defendant Bollwinkel were not filed in the proceeding below, case No. 94–3452. However, both parties relied on them, without objection from the other, in the summary judgment proceedings. The trial court could rely on those representations, and it apparently did. We shall, also, in our review of the assignment of error.

We believe that the record presents genuine issues of material fact for determination, and that for that reason the trial court erred when it entered summary judgment for the defendants.

Plaintiff–appellant Sicard's first assignment of error is sustained. His second and third assignments or error are overruled.

■ Defendant-appellee University of Dayton also argues that Sicard's amended complaint fails to establish a basis for the university's liability for Bollwinkel's acts because it alleges only negligent entrustment on the university's part. This argument would have been properly made in a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. No such motion was made in the trial court. Therefore, the question is not properly before us for review.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

FREDERICK N. YOUNG, J., concurs.

FAIN, J., dissents.

FAIN, Judge, dissenting.

The appropriate standard for recklessness in the context of an alleged personal injury tort during recreational activity is defined in Section 500 of the Restatement of Torts 2d. *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, syllabus. That section of the Restatement provides as follows:

"The actor's conduct is in reckless disregard of the safety of another if he does an act or *intentionally fails to do an act* which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." (Emphasis added.)

In the case before us, Bollwinkel's alleged sin was one of omission rather than commission. He failed to perform his alleged duty as a spotter for Sicard. Therefore, the portion of the definition of "reckless disregard" emphasized above is the relevant definition, and it requires that the failure to do the act be intentional.

The evidence in this case, even when viewed in a light most favorable to the plaintiff, would not, in my opinion, support a conclusion that Bollwinkel's failure

to act as a spotter for Sicard, which appears at most to have been the result of momentary inattention, was intentional. Accordingly, it does not satisfy the approved test for reckless disregard, and would not permit recovery against Bollwinkel. Because the alleged liability of the University of Dayton is derived solely through the alleged liability of Bollwinkel, the university, also, was entitled to summary judgment on Sicard's claim.

I have some reservations whether this case fits the mold of the cases involving recreational sports injuries, where physical contact is expected and even encouraged. However, that is the way this case was pled in the trial court, and we must take the case as it was pled.

I would affirm the judgment of the trial court. In my view, Bollwinkel's alleged inattention to his duties as a spotter, while conversing with a third person, is classic negligence, not recklessness.