**DOODY, Appellant,**

v.

**EVANS, Appellee.**

[Cite as *Doody v. Evans*, 188 Ohio App.3d 479, 2010-Ohio-3523.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–1058.

Decided July 29, 2010.

Hollern & Associates and Edwin J. Hollern, for appellant.

Weston Hurd L.L.P., W. Charles Curley, and Nathaniel W. Jackson, for appellee.

Sadler, Judge.

{¶ 1} Plaintiff-appellant, Michael J. Doody, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Martin J. Evans, on appellant's personal-injury claim. For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} In support of his motion for summary judgment, appellee submitted the deposition testimony of appellant. Appellant testified that he began playing organized adult recreational softball for Varsity Club Bedlams in 1982. In addition to playing for Varsity Club Bedlams, he played for two other teams at various times between 1986 and 1996. Consistent with this history, appellant described himself as a "very experienced softball player."

{¶ 3} In the late 1990's, appellant transitioned from playing outfield to playing catcher. Appellant averred that prior to the incident at issue, he had never been involved in a collision with an opposing player. He acknowledged, however, that as a catcher, he has physical contact with base runners while in the process of making a tag. He further acknowledged that while rare, collisions between defensive players and base runners can and do happen in softball.

{¶ 4} On July 23, 2006, Varsity Club Bedlams played appellee's team, Ledo's Ballers, in the Men's Competitive Tuttle Park League sponsored by the Columbus Recreation and Parks Department. Although the two teams had played against each other for years, the competition was friendly, and there was no "bad blood" between the teams or between appellant and appellee.

{¶ 5} Appellant testified that the rules of recreational softball require a base runner, when approaching a base, to "get down and out of the way and avoid a

collision at all cost." Appellant identified the rules governing Columbus Recreation and Parks Department softball leagues for the 2006 season. Regarding collisions during base running, those rules state:

F. Base Running

* * *

4) **Collision:** It is the greater responsibility of the runner to avoid a collision. Intent has nothing to do with it.

The Collision Rule does not apply when the base runner is sliding.

When a player avoids a fielder who is illegally blocking the runner, the runner will be declared safe. Even though he/she may not have reached the base.

   i.   The penalty for colliding with another player is:

   ii.   Runner is out.

   iii.   Runner is ejected.

{¶ 6} Appellant testified that during the seventh inning, he was playing catcher; appellee was on second base. The batter for appellee's team hit a ground ball to right center field. Appellee rounded third base and headed toward home in an effort to score. As appellant waited for the throw from the outfield, he was standing slightly inside and approximately two to four feet up the third base line from home plate. He further testified that he was neither standing in the base path nor blocking home plate and that he never moved from his position as the outfielder's throw arrived. Appellee and the ball arrived at home plate simultaneously. Appellee collided with appellant without attempting to slide or to avoid the collision. Appellant described the collision as a "crushing blow" that caused him to "collapse into [himself]"; however, he admitted that he was not knocked off his feet or even displaced from his position by more than a few inches. Appellant testified that he was able to make the tag on appellee before he scored, and the umpire called appellee out. Despite protestations from appellant's coach, appellee was not ejected from the game. As a result of the collision, appellant suffered a torn bicep tendon in his left arm, which required surgical intervention.

{¶ 7} Appellant testified that he did not believe that appellee intended to hurt him. He further testified that he had "no reason to believe that [appellee] would have intentionally caused the collision in the sense that just wouldn't be in the nature of recreational softball." While appellant maintained that appellee was "reckless," he described appellee's conduct as "an act of softball."

{¶ 8} In opposition to appellee's motion for summary judgment, appellant submitted the deposition testimony of appellee. Appellee testified that he had played organized adult recreational softball for over 30 years. Appellee's version of the July 23, 2006 incident differed from that of appellant. For instance,

appellee testified that his teammate hit the ball to left field, not right field. According to appellee, appellant was positioned slightly outside and approximately four to six feet up the third baseline from home plate. In addition, appellee testified that he slid into home and he was tagged out by appellant, but he did not collide with him.

{¶ 9} Appellee agreed that league rules require a base runner to slide or avoid a collision with a defensive player and that a base runner who collides with an opposing player violates league rules. He further testified that a base runner who collides with a defensive player rather than slides or otherwise avoids a collision acts "recklessly," as that term is commonly used.

{¶ 10} Appellant also submitted the affidavit testimony of his coach, Aaron Usselman, who testified that he witnessed the incident on July 23, 2006. Usselman stated that he was familiar with the league rules prohibiting base runners from colliding with catchers who are not blocking the base path. According to Usselman, appellant was positioned outside the third base path when appellee collided with appellant, and that appellee made no attempt to avoid appellant or the collision. He further averred that it appeared that appellee's collision with appellant was an attempt to knock the ball out of appellant's hand, an act Usselman described as a "flagrant violation" of league rules. Usselman further stated that appellee is an experienced softball player who knows it is a violation of league rules to collide with a catcher who is not blocking the base path. In addition, Usselman averred that the purpose of the league rule prohibiting base runners from colliding with catchers who are not blocking the base path is to prevent injury. Usselman asserted that appellee acted recklessly and without regard for appellant's safety.

{¶ 11} Following the incident, appellant filed a complaint asserting causes of action for negligence and "reckless behavior in disregard for the safety of another" and seeking damages related to injuries he sustained in the collision.

{¶ 12} Appellee filed a motion for summary judgment, contending that summary judgment was appropriate on both counts of appellant's complaint because at the time appellant sustained his injury, he was engaged in a recreational sports activity, thereby foreclosing liability for negligence, and because any alleged violation of the league rule prohibiting contact with a defensive player was not sufficient to establish reckless behavior.

{¶ 13} Appellant filed a memorandum contra, arguing that summary judgment was inappropriate because genuine issues of material fact existed as to whether a collision even occurred, and, if it did, whether appellee's violation of the league rule prohibiting contact with a defensive player constituted reckless behavior.

{¶ 14} In his reply to appellant's memorandum contra, appellee acknowledged that the evidentiary materials submitted by the parties revealed conflicting testimony as to whether the parties collided during the softball game. Appellee maintained, however, that whether or not a collision occurred did not constitute a material factual dispute because, for purposes of summary judgment, appellant was entitled to have the evidence construed most strongly in his favor, and therefore, the court should assume that a collision in fact occurred. Appellee further argued that the evidence appellant relied upon in support of his argument that appellee acted recklessly, i.e., Usselman's statement to that effect, was inadmissible under Civ.R. 56(C). Appellee further maintained that the record contained insufficient evidence to establish that he acted recklessly.

{¶ 15} The trial court granted appellee's motion for summary judgment. The court averred that it accepted appellant's version of the incident, i.e., that appellee had collided with appellant at home plate. The court found that the recreational or sports-activity exception to negligence liability applied and that there was no evidence of reckless behavior on the part of appellee. In so finding, the court particularly relied upon appellant's assertion that the collision between him and appellee was "an act of softball," which the court construed to mean that the collision was a foreseeable, customary part of the game.

{¶ 16} Appellant timely appeals, assigning one error for our consideration:

The trial court erred in granting appellee's motion for summary judgment because a genuine issue of material fact remains in dispute.

{¶ 17} Appellant's single assignment of error asserts that the trial court erred in granting summary judgment in favor of appellee. An appellate court reviews a trial court's grant of summary judgment independently and without deference to the trial court's determination. *Sadinsky v. EBCO Mfg. Co.* (1999), 134 Ohio App.3d 54, 58, 730 N.E.2d 395. An appellate court applies the same standard as the trial court in reviewing a trial court's disposition of a summary judgment motion. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 18} Before summary judgment may be granted under Civ.R. 56(C), the trial court must determine that "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio

St.3d 509, 511, 628 N.E.2d 1377, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 19} Appellant contends that a genuine issue of material fact exists as to the ultimate issue in the case, that is, whether appellee collided with appellant, and that such issue should be submitted to the jury for determination at trial. Appellant maintains that if a jury believes that appellee intended to knock the ball out of appellant's hands by colliding with him, it will conclude that such an intentional violation of the league's no-collision rule constitutes reckless behavior. Conversely, appellant maintains that if a jury believes that appellee did not collide with appellant, it will conclude that appellee did not engage in reckless behavior.

{¶ 20} While the evidence regarding whether appellee collided with appellant was in conflict, we must construe that evidence in the light most favorable to appellant and therefore assume that appellee did collide with appellant. Thus, the issue resolves to whether appellee's violation of the league's no-collision rule amounts to reckless behavior.

{¶ 21} The Supreme Court of Ohio has held that individuals who engage in sports or recreational activities assume "the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d." *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, syllabus. We note that there is neither an allegation nor any evidence supporting the position that appellee intentionally caused appellant's injury. Instead, appellant argues that appellee acted recklessly. An actor's conduct is "reckless" when "[the actor] does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Id. at 96, 559 N.E.2d 699, fn. 2, quoting Restatement of Torts 2d, Section 500.

{¶ 22} "What constitutes an unreasonable risk under the circumstances of a sporting event must be delineated with reference to the way the particular game is played, *i.e.,* the rules and customs that shape the participants' ideas of foreseeable conduct in the course of a game." *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 105, 559 N.E.2d 705. *Thompson* further stated that "any conduct which is characterized by the strong probability of harm that recklessness entails, and which occurs outside the normal conduct and customs of the sport, may give rise to liability." Id. at 105, 559 N.E.2d 705. By way of example, the court

noted, "In the context of the game of golf, a player who hurls a club into the air in a moment of pique and injures another golfer should be held accountable."  Id.

{¶ 23} In *Santho v. Boy Scouts of Am.,* 168 Ohio App.3d 27, 2006-Ohio-3656, 857 N.E.2d 1255, ¶ 19, this court stated, "[T]he Restatement notes that simply violating a statute or rule is not enough to constitute a reckless disregard for safety.  The violation of the rule must (1) be intentional and (2) be recognized as resulting in a significantly higher risk that serious harm will occur."  Id., citing Restatement of Torts 2d, Section 500(e).

{¶ 24} In *Bentley v. Cuyahoga Falls Bd. of Edn.* (1998), 126 Ohio App.3d 186, 709 N.E.2d 1241, a high school soccer player, Kristine, suffered a broken leg when an opposing player, Ellie, collided with her while performing an "illegal" slide tackle.  Ellie was thereafter "red-carded" and ejected from the game for violating a rule designed to prevent injuries to players.  During her deposition, Kristine testified that it was a foreseeable part of soccer that a player would attempt to initiate a slide tackle and miss the ball.  She further testified that it was foreseeable that during a soccer match, some players might try to stretch the rules, that there is often contact between players, and that injuries can and do occur as a result of such contact.  Kristine averred that she accepted these risks as being part of the game of soccer.  Applying *Marchetti,* the court of appeals affirmed summary judgment in favor of Ellie, noting:

[E]xcerpts from Kristine's deposition show that Kristine was aware that having her legs knocked out from under her from a slide tackle, even one which qualified for a red card penalty in the rules of soccer, was a foreseeable occurrence when playing a soccer game.

* * *

Kristine claims that because the referee red-carded Ellie and threw Ellie out of the game, Kristine proffered evidence supporting the elements of reckless conduct.  Kristine argues that because Ellie violated a rule of soccer and made contact with Kristine two seconds after Kristine chipped the ball and took three running steps, Kristine did not assume the risk of having her legs knocked out from under her from a slide tackle.  Kristine also contends that such an occurrence was unforeseeable.  However, Kristine must show that having her legs knocked out from under her by a slide tackle made by a player two seconds after Kristine chipped the ball away and took three running steps was unforeseeable in light of the nature of a soccer game.

Id. at 192, 709 N.E.2d 1241.

{¶ 25} The court continued:

Kristine avers that Ohio law supports the proposition that a player who has violated a rule created for the purpose of safety has created an unreasonable

risk and thus has been reckless. See *Thompson v. McNeill,* 53 Ohio St.3d at 105, 559 N.E.2d [705]; *Sicard v. Univ. of Dayton* (1995), 104 Ohio App.3d 27, 31, 660 N.E.2d 1241[.] However, the violation of a safety rule applies only to the determination of what may be an unreasonable risk, which is only one part of the recklessness analysis. See *Thompson v. McNeill, supra,* at 105, 559 N.E.2d 705 * * *. In deciding whether recklessness occurred, the Ohio Supreme Court considered whether the specific conduct was both within the rules and foreseeable. *Id.* at 106, 559 N.E.2d 705 * * *. Ohio law has not abandoned an inquiry into foreseeability.

Id.

{¶ 26} In *Topola v. Wisniewski* (Apr. 5, 1990), 8th Dist. No. 56735, 1990 WL 40268, a base runner attempted to score from third base on a sacrifice fly to the outfield. When the ball arrived at home plate, the base runner was still about 30 feet away. The catcher caught the ball two feet from home plate on the third base side and then straddled the baseline in order to tag the base runner out. The base runner, rather than slowing down, accelerated his pace and leaped into the air feet first and drove his feet into the catcher's left leg with a karate-kick-like motion without attempting to slide. League rules required base runners to slide under such circumstances or be called out.

{¶ 27} The trial court entered summary judgment in favor of the defendant base runner. The court of appeals reversed, noting that the base runner not only failed to slide but "rather leaped at the last instant and drove his feet in some unorthodox manner into the plaintiff's leg." Construing the evidence in a light most favorable to the plaintiff catcher, the court of appeals found that reasonable minds could conclude that the base runner had acted recklessly because his conduct fell outside the scope of the rules or usages of the game.

{¶ 28} On appeal, the Supreme Court of Ohio summarily reversed, citing *Marchetti* and *Thompson.* See *Topola v. Wisniewski* (1990), 55 Ohio St.3d 30, 562 N.E.2d 891. Although the court did not explain the rationale for its decision, we presume that it concluded, consistent with the rationale of *Marchetti* and *Thompson,* that there was no liability because injuries sustained as a result of a collision between a base runner and a catcher are a foreseeable risk of the game of softball.

{¶ 29} We cannot endorse appellant's proposition that his injury is legally compensable solely because it occurred as a result of a violation of the league's no-collision rule. As noted in *Bentley,* violation of a safety rule applies only to the determination of what may be an unreasonable risk, which is only one part of the recklessness analysis. A court must consider whether the specific conduct was both within the rules *and* foreseeable. *Bentley,* 126 Ohio App.3d 186.

{¶ 30} Physical contact is undeniably part of the game of softball. Indeed, the game necessarily involves base runners being tagged by opposing players. In addition, fielders sometimes collide while in pursuit of a ball, and players are occasionally struck by an errantly thrown ball. Moreover, the fact that the ball may be hit or thrown into a base runner's path necessarily means that, at times, base runners and fielders will collide.

{¶ 31} Further, the very fact that the Columbus Recreation and Parks Department has instituted a no-collision rule suggests that collisions are contemplated as a part of the game. The rule at least arguably is consistent with the notion that ejection rather than tort action is the appropriate sanction for such conduct. In contrast, one would not expect league rules to specify the appropriate penalty for one player attacking another with a baseball bat or to expressly prohibit a pitcher from purposely throwing a ball at an unsuspecting player standing in the on-deck circle.

{¶ 32} In the instant matter, the trial court concluded that a collision between a base runner and a catcher is simply a foreseeable hazard of the game of softball. We agree. Appellant acknowledged that catchers often have physical contact with base runners while in the process of making a tag. He further acknowledged that while rare, collisions between defensive players and base runners can and do happen in softball. He further testified that he did not believe that appellee intended to hurt or even collide with him. Indeed, appellant described appellee's conduct as "an act of softball."

{¶ 33} In our view, appellant's injury was the result of a foreseeable hazard of the game of softball and was part of a foreseeable risk assumed by appellant as a competitor. In deciding this case as we do, we are not saying that no base path collision can ever lead to tort liability; however, we are persuaded that there was nothing about the instant collision that is so exceptional that the general rule of separation between sporting event and tort action should be vitiated here. We acknowledge that a fine line may sometimes have to be drawn between sporting injuries that can and cannot be legally remedied. Absent evidence that appellant's injury arose out of conduct that was not truly an intrinsic part of the sport of competitive softball, appellant's cause of action cannot be sustained. Because there are no genuine issues of material fact regarding this matter, the trial court did not err in concluding that appellee was entitled to judgment as a matter of law. We thus overrule appellant's single assignment of error.

{¶ 34} For the foregoing reasons, the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

BROWN, J., concurs.

TYACK, P.J., dissents.

BROWN, Judge, concurring.

{¶ 35} The facts in this case do not describe a Pete Rose—Ray Fosse type of collision at home plate. Absent flagrant conduct, I concur.

TYACK, Presiding Judge, dissenting.

{¶ 36} Because I believe that there are genuine issues of material fact in this case, I would reverse the summary judgment granted on behalf of Martin J. Evans and remand the case for further appropriate proceedings. Because the majority of the panel does not, I respectfully dissent.

{¶ 37} This was not a major league baseball game. This was a softball game in an adult recreational league. The league had clear rules against collisions between base runners and members of the team in the field. As acknowledged in the lead discussion, it was "the greater responsibility of the runner to avoid a collision."

{¶ 38} Martin J. Evans was clearly the base runner. Michael J. Doody was the catcher. Doody testified that he was not standing in the base path or otherwise blocking home plate. Doody testified that Evans ran into him, causing Doody to suffer a torn bicep.

{¶ 39} Evans denied that a collision occurred. Evans had no reasonable explanation as to how Doody suffered a torn bicep if no collision whatsoever occurred.

{¶ 40} The trial court found that collisions are an act of softball. In a league where collisions are banned, that is clearly not the case. In fact, runners who collide with fielders are automatically out and are automatically ejected from the game.

{¶ 41} Assuming for purposes of a motion for summary judgment that the evidence must be construed most strongly in favor of Doody, Evans went outside the base path and ran into Doody with such force as to rupture Doody's bicep.

{¶ 42} I fail to see how the runner can be anything but reckless when the runner is outside the base path and runs at high speed into a fielder while the two are playing in a league that specifically bars collisions and makes the runner responsible for avoiding collisions. Assuming Evans did not deliberately run into Doody as the catcher, Evans did not avoid the collision and had to know that he could seriously injure someone if he (Evans) ran into them at full speed. In short, Evans had to know that he was acting recklessly.

{¶ 43} To me, *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, requires us to find recklessness here. The rules of the game in this recreational softball league were that no collision should occur. Doody had a right to expect that the rules would be followed. Evans had a duty to follow the rules and avoid a collision. A collision in which a base runner is running at full speed while trying to score from second base and forcefully runs into the catcher entails a strong probability of physical harm for the catcher, especially if the catcher does not brace himself or herself for the collision because the catcher has no reason to believe the runner will ignore the league rules against collisions.

{¶ 44} I do not know exactly what happened when Doody was injured. However, if his version of the facts are correct, a trier of fact could very well find Evans to have been reckless in injuring him. Therefore, I believe summary judgment was not appropriate.

{¶ 45} Again, I respectfully dissent.