[Cite as *Morgan v. Kent State Univ.*, 2016-Ohio-3303.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Aaron S. Morgan,                           :

       Plaintiff-Appellant,           :           No. 15AP-685
                                                            (Ct. of Cl. No. 2014-00639)
v.                                                :

Kent State University et al.,             :           (REGULAR CALENDAR)

       Defendants-Appellees.        :

---

D E C I S I O N

Rendered on June 7, 2016

---

**On brief:** *David B. Spalding*, for appellant.

**On brief:** *Michael DeWine*, Attorney General, and *Lee Ann Rabe*, for appellee Kent State University.

---

APPEAL from the Court of Claims of Ohio

DORRIAN, P.J.

{¶ 1}   Plaintiff-appellant, Aaron S. Morgan, appeals the June 19, 2015 judgment of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee Kent State University ("KSU").  For the following reasons, we affirm the judgment of the Court of Claims.

I.  Facts and Procedural History

{¶ 2}   During the period of time relevant to the present matter, appellant was a student at KSU's Stark campus.  In the fall semester 2012, appellant enrolled in a beginning karate class taught by Edward C. Malecki, an employee of KSU.  Appellant had no experience in martial arts before enrolling in the beginning karate class, but had a general idea of what karate entailed through movies and television.

{¶ 3} The course syllabus for beginning karate listed objectives for the students, including: "[d]emonstrat[ing] basic self defense techniques including release from various holds and counter attacks, joint locks and throws." (Apr. 17, 2015 KSU Mot. for Summ. Jgmt., Ex. D.) Additionally, the syllabus listed a variety of fighting techniques, including punches and kicks, that the students were expected to perform. Students enrolled in the class were required to wear a mouth guard and padded gloves.

{¶ 4} As part of the class, students were required to spar with one another and with the instructor using only "light physical contact." (Malecki Dep. at 52.) According to Malecki, there was no bodily or facial contact permitted either by the students or the instructor. During the sparring, students practiced guarding themselves using their hands in defensive postures in front of their body. It was not uncommon for students to make mistakes, such as dropping their guard by lowering their hands. When a student would drop his or her guard, the instructor would stop the sparring procedure until the student resumed guarding himself or herself.

{¶ 5} On October 24, 2012, while appellant was sparring with Malecki, he lost his balance and dropped his guard. When appellant dropped his guard, Malecki punched appellant in the face. According to appellant, Malecki's palm struck him on the nose. Malecki was not wearing padded gloves when he struck appellant. Appellant's nose immediately started bleeding. Malecki and a student employee helped to stop appellant's bleeding and then filled out an incident report. Appellant later sought medical care and was told that he suffered a nasal fracture.

{¶ 6} On July 15, 2014, appellant filed a complaint in the Court of Claims asserting claims for negligence and negligent hiring against KSU. On March 31, 2015, appellant filed a motion for partial summary judgment and attorney fees and expenses pursuant to Civ.R. 37(C). On April 17, 2015, KSU filed a motion for summary judgment and a memorandum contra appellant's motion for partial summary judgment. On April 28, 2015, appellant filed a supplemental brief in support of his motion for attorney fees and expenses. On April 28, 2015, appellant filed a reply brief in support of his motion for summary judgment.

{¶ 7} On June 19, 2015, the Court of Claims filed an entry granting KSU's motion for summary judgment and denying appellant's motion for attorney fees and expenses.

## II.  Assignments of Error

{¶ 8}    Appellant appeals and assigns the following four assignments of error for our review:

> [I.] The trial court erred in holding that the broad and general language contained in the Waiver, which neither Kent State University nor Aaron Morgan intended to apply to academic or physical education classes, effectively released the Appellee from liability resulting from the Appellant being struck in the face by his instructor during a class the Appellant subsequently enrolled in through the University.
>
> [II.] The trial court erred in holding that the Appellant's claim against Kent State University is barred by the doctrine of primary assumption of risk.
>
> [III.] The trial court erred in failing to grant Plaintiff-Appellant's Motion for Partial Summary Judgment, as to the issue of liability.
>
> [IV.] The trial court erred by its failure to rule on Plaintiff-Appellant's Motion for Attorney Fees and Expenses pursuant to Civ.R. 37(C).

For ease of discussion, we consider appellant's assignments of error out of order.

## III.  Discussion

### A.  Second Assignment of Error

{¶ 9}    In his second assignment of error, appellant asserts the Court of Claims erred in holding that his claim for negligence was barred by the doctrine of primary assumption of the risk.

{¶ 10}    "[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981), citing *Feldman v. Howard*, 10 Ohio St.2d 189, 193 (1967).  "Under the law of negligence, a defendant's duty to a plaintiff depends on the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." *Morgan v. Ohio Conference of the United Church of Christ*, 10th Dist. No. 11AP-405, 2012-Ohio-453, ¶ 11, citing *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 645 (1992).

{¶ 11} "Ohio law recognizes three categories of assumption of the risk as defenses to a negligence claim: express, primary, and implied or secondary." *Schnetz v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 207, 2011-Ohio-3927, ¶ 21 (10th Dist.), citing *Crace v. Kent State Univ.*, 185 Ohio App.3d 534, 2009-Ohio-6898, ¶ 10 (10th Dist.).  Ohio courts have historically applied the doctrine of primary assumption of the risk to cases involving sporting events and recreational activities.  *Crace* at ¶ 12, citing *Ballinger v. Leaniz Roofing, Ltd.*, 10th Dist. No. 07AP-696, 2008-Ohio-1421, ¶ 8, citing *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 114 (1983).

{¶ 12} "Under the doctrine of primary assumption of the risk, a plaintiff who voluntarily engages in a recreational activity or sporting event assumes the inherent risks of that activity and cannot recover for injuries sustained in engaging in the activity unless the defendant acted recklessly or intentionally in causing the injuries." *Morgan* at ¶ 13, citing *Crace* at ¶ 13, citing *Santho v. Boy Scouts of Am.*, 168 Ohio App.3d 27, 2006-Ohio-3656, ¶ 12 (10th Dist.).  *See Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990), paragraph one of the syllabus.  Underlying the doctrine is the rationale that certain risks are so inherent in some activities that they cannot be eliminated, and therefore a person participating in such activities tacitly consents to the risks involved.  *Crace* at ¶ 13, citing *Collier v. Northland Swim Club*, 35 Ohio App.3d 35, 37 (10th Dist.1987).  "The test for applying the doctrine of primary assumption of the risk to recreational activities and sporting events requires that '(1) the danger is ordinary to the game, (2) it is common knowledge that the danger exists, and (3) the injury occurs as a result of the danger during the course of the game.' " *Morgan* at ¶ 13, quoting *Santho* at ¶ 12.

{¶ 13} " 'To be covered under the [primary-assumption-of-the-risk] doctrine, the risk must be one that is so inherent to the sport or activity that it cannot be eliminated.' " *Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, ¶ 19, quoting *Konesky v. Wood Cty. Agricultural Soc.*, 164 Ohio App.3d 839, 2005-Ohio-7009, ¶ 19 (6th Dist.), citing *Westray v. Imperial Pools & Supplies, Inc.*, 133 Ohio App.3d 426, 432 (6th Dist.1999).  "Where the risk at issue is not inherent, then a negligence standard applies." *Id.*

{¶ 14} The Supreme Court of Ohio has explained the applicability of the doctrine of primary assumption of the risk and the rationale underlying it as follows:

> Acts that would give rise to tort liability for negligence on a city street or in a backyard are not negligent in the context of a

game where such an act is foreseeable and within the rules. For instance, a golfer who hits practice balls in his backyard and inadvertently hits a neighbor who is gardening or mowing the lawn next door must be held to a different standard than a golfer whose drive hits another golfer on a golf course. A principal difference is the golfer's duty to the one he hit. The neighbor, unlike the other golfer or spectator on the course, has not agreed to participate or watch and cannot be expected to foresee or accept the attendant risk of injury. Conversely, the spectator or participant must accept from a participant conduct associated with that sport. Thus a player who injures another player in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct. Were we to find such a duty between co-participants in a sport, we might well stifle the rewards of athletic competition.

*Thompson v. McNeill*, 53 Ohio St.3d 102, 104 (1990), *modified on other grounds by Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711. *See also Crace* at ¶ 14.

{¶ 15} When considering a defense of primary assumption of the risk, "the injured plaintiff's subjective consent to and appreciation for the inherent risks are immaterial to the analysis." *Crace* at ¶ 16, citing *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, ¶ 9, citing *Ramos v. Countryside*, 137 Ill.App.3d 1028, 1031-32 (1985). Thus, even persons " 'entirely ignorant of the risks of a sport, still assume the risk * * * by participating in a sport or simply by attending the game. The law simply deems certain risks as accepted by plaintiff regardless of actual knowledge or consent.' " (Footnotes omitted.) *Gentry* at ¶ 12, quoting Susan M. Gilles, *From Baseball Parks to the Public Arena*: Assumption of the Risk in Tort Law and Constitutional Libel Law, 75 Temple L.Rev. 231, 236 (2002). In accordance with these principles, this court has stated that " 'primary assumption of [the] risk requires an examination of the activity itself and not plaintiff's conduct. If the activity is one that is inherently dangerous and from which the risks cannot be eliminated, then a finding of primary assumption of [the] risk is appropriate.' " *Morgan* at ¶ 15, quoting *Gehri v. Capital Racing Club, Inc.*, 10th Dist. No. 96APE10-1307 (June 12, 1997).

{¶ 16} "The affirmative defense of primary assumption of the risk completely negates a negligence claim because the defendant owes no duty to protect the plaintiff

against the inherent risks of the recreational activity in which the plaintiff engages." *Id.* at ¶ 14, citing *Crace* at ¶ 15, citing *Gentry* at ¶ 11, citing Prosser & Keeton, *The Law of Torts*, Section 68, at 496 (5th Ed.1984). " 'Because a successful primary assumption of risk defense means that the duty element of negligence is not established as a matter of law, the defense prevents the plaintiff from even making a prima facie case.' " *Wolfe v. Bison Baseball, Inc.*, 10th Dist. No. 09AP-905, 2010-Ohio-1390, ¶ 21, quoting *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 432 (1996). "Because of the great impact a ruling in favor of a defendant on primary assumption of risk grounds carries, a trial court must proceed with caution when contemplating whether primary assumption of risk completely bars a plaintiff's recovery." *Gallagher* at 432.

{¶ 17} In *Crace*, this court considered the applicability of the doctrine of primary assumption of the risk. In that case, Angela Crace, a student cheerleader at KSU, asserted a claim for negligence against KSU after she was severely injured during a cheerleading practice. On the day Crace was injured, the KSU cheerleading coach assigned members of the cheerleading squad, including Crace, to various positions in a maneuver known as a the "Big K." The Big K was essentially a human pyramid that consisted of a base, a middle layer/base, and flyers; the pyramid was two and one-half people high. Spotters were positioned on the ground to catch the flyers when they dismounted the pyramid.

{¶ 18} Crace and several other members of the KSU cheerleading squad had successfully performed the Big K during the previous season. However, many other members of the team had neither performed nor seen the maneuver. On the day Crace was injured, the coach assigned Crace to the position of flyer. The first two attempts at the mount failed, resulting in Crace falling from about 15 feet in the air. However, the front spotter caught Crace when she fell. Before the third attempt, the coach substituted as the rear spotter a team member who had neither seen nor participated in the Big K. On the third attempt, the substitute rear spotter failed to catch Crace as she fell from approximately 15 feet in the air. As a result, Crace's fall was unbroken, and she fell to the ground, resulting in immediate paraplegia.

{¶ 19} At issue in *Crace* was whether the doctrine of primary assumption of the risk applied to relieve KSU of liability based on the conduct of the cheerleading coach. Crace argued that the doctrine applied only to co-participants in a recreational activity.

We disagreed, finding that the doctrine of primary assumption of the risk applies to co-participants and non-participants alike.  In so finding, we noted that the analysis of the doctrine focuses exclusively on the activity itself.  Thus, if the activity is one that is inherently dangerous and from which risks cannot be eliminated, primary assumption of the risk is applicable.  *Id.* at ¶ 16, citing *Gehri.*  In so finding, we stated:

> A holding to the contrary would likely shift the focus of the analysis away from the activity and its inherent risks. The analysis would then unnecessarily focus upon the extent of the defendant's involvement and the defendant's classification as a participant, nonparticipant, coach, instructor, official, operator, owner, sponsor, provider, or otherwise. Injured participants would frame their allegations sufficiently to cast a liability net just beyond the reach of *Marchetti* and *Thompson*, with no regard for the inherent risks of the activity.

*Id.* at ¶ 25.

{¶ 20} We thus rejected Crace's argument that primary assumption of the risk could not relieve a university of liability for negligence based on the conduct of one of its coaches in a cheerleading practice.  Having so concluded, we next determined based on the evidence presented at trial that suffering an injury due to a fall is an inherent risk of cheerleading.  Therefore, we found that the doctrine of primary assumption of the risk applied, and, as such, KSU owed no duty to protect Crace from the inherent risk of injury related to a fall while participating in cheerleading, absent a demonstration of recklessness or intentional misconduct.

{¶ 21} Here, appellant contends that the trial court erred in applying the doctrine of primary assumption of the risk because "the facts of this case manifestly establish that the injury sustained by [appellant] on October 24, 2012 was * * * not a 'foreseeable' consequence of participating in the subject Beginning Karate class."  (Emphasis omitted.) (Appellant's Brief at 28-29.)  Appellant cites the following circumstances in support of his contention: (1) all of the students in the class were "novices in martial arts"; (2) "the students were specifically assured by the instructor that there would be no bodily contact during the class and that facial contact was explicitly prohibited"; (3) "the instructor was required to wear padded, protective gloves as a further safeguard against injury"; and (4) "when a student dropped his or her guard, the instructor was required to stop the session until the student raised his or her guard."  (Appellant's Brief at 28.)

{¶ 22} Appellant suggests the court consider that he had no experience in the martial arts. However, such a suggestion "shift[s] the focus of the analysis away from the activity and its inherent risks." *Crace* at ¶ 25. Appellant further suggests the court consider the instructor's actions. This essentially is a claim that the instructor was reckless. However, appellant's complaint did not allege reckless or intentional conduct.

{¶ 23} Therefore, we decline to consider the same and limit our analysis to whether the doctrine of primary assumption of the risk applies to appellant's claim for negligence. Thus, we consider whether karate is an inherently dangerous activity from which the risks cannot be eliminated. *Morgan* at ¶ 15; *Crace* at ¶ 16.

{¶ 24} The Court of Claims found that "[t]here is no question that the martial arts class was a sports or recreational activity with an inherent risk of injury." (Jgmt. Entry at 5.) Furthermore, the Court of Claims found that "[p]hysical contact between participants during karate sparring is simply a foreseeable hazard of the activity." (Jgmt. Entry at 5.) Other courts have found that participating in martial arts involves inherent risk. *Levine v. Gross*, 123 Ohio App.3d 326, 330 (9th Dist.1997) (finding that the plaintiff understood the "kind of risk posed by sparring and grappling in the course of a karate lesson"); *Barakat v. Pordash*, 164 Ohio App.3d 328, 2005-Ohio-6095, ¶ 12 (8th Dist.) (finding in the context of martial arts that "being injured in the course of a hold or maneuver is a risk that is a foreseeable and customary risk of the sport").

{¶ 25} Karate is a recreational activity involving physical contact in the form of punches, kicks, and other techniques as detailed in the course outline for the beginning karate course in which appellant was enrolled. Thus, by its very nature, karate, as a martial art, is an inherently dangerous activity from which the risk of harm cannot be eliminated. Indeed, the course outline notes that a "mouthguard; sparring gloves; athletic supporter w/cup" are required. (KSU Mot. for Summ. Jgmt., Ex. D.) As danger is inherent in karate, it is common knowledge that such danger exists, and appellant's injury occurred during the course of participating in the inherently dangerous activity, we find that the doctrine of primary assumption of the risk applies in this case. *Morgan* at ¶ 13, citing *Santho* at ¶ 12. Under the doctrine of primary assumption of the risk, KSU owed no duty to protect appellant from the inherent risks of the activity. *Id.* at ¶ 27. As a result, appellant is precluded from establishing a prima facie case of negligence, and the trial

court did not err in granting KSU's motion for summary judgment. *Barakat* at ¶ 13, citing *Gentry* ("Because an inherent risk was involved, recovery is dependent upon whether the defendant's conduct was either reckless or intentional."); *Wolfe* at ¶ 21.

{¶ 26} Accordingly, appellant's second assignment of error is overruled.

**B. First and Third Assignments of Error**

{¶ 27} In his first assignment of error, appellant asserts that the Court of Claims erred by holding that the waiver signed by appellant released KSU from liability for the incident on October 24, 2012. In his third assignment of error, appellant asserts that the Court of Claims erred by failing to grant appellant's motion for partial summary judgment on the issue of liability. Having overruled appellant's second assignment of error, appellant's first and third assignments of error are rendered moot.

**C. Fourth Assignment of Error**

{¶ 28} In his fourth assignment of error, appellant asserts that the Court of Claims erred by failing to rule on his motion for attorney fees and expenses pursuant to Civ.R. 37(C). We begin by noting that the Court of Claims in its June 19, 2015 judgment entry granting KSU's motion for summary judgment did in fact rule on appellant's March 31, 2015 motion for attorney fees and expenses. Specifically, the court stated: "The court finds that there was either a good reason for [KSU's] failure to admit or the admissions sought were of no substantial importance. The court further finds that [appellant] has not suffered prejudice regarding the responses at issue. Accordingly, [appellant's] motion for attorney fees and expenses is denied." (Emphasis omitted.) (Jgmt. Entry, fn. 1.)

{¶ 29} Civ.R. 37(C) provides as follows:

> **Expenses on failure to admit**. If a party, after being served with a request for admission under Rule 36, fails to admit the genuineness of any documents or the truth of any matter as requested, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. Unless the request had been held objectionable under Rule 36(A) or the court finds that there was good reason for the failure to admit or that the admission sought was of no substantial importance, the order shall be made.

{¶ 30} Thus, "[a] party may deny a request for admissions, but, upon motion pursuant to Civ.R. 37(C), improper denials may subject the responding party to sanctions." *Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision*, 82 Ohio St.3d 193, 195 (1998). "Whether such denials are subject to Civ.R. 37(C) sanctions depends upon whether the proof at trial contradicts the denial." *Id.* The party denying a later-proved matter has the burden of proving that: "(1) the request for admissions was objectionable under Civ.R. 36 (A); (2) there was a good reason for the failure to admit; or (3) the matter was of no substantial importance." *Itskin v. Restaurant Food Supply Co.*, 7 Ohio App.3d 127, 129 (10th Dist.1982), paragraph one of the syllabus.

{¶ 31} "The determination of whether to award expenses and the amount thereof, pursuant to Civ.R. 37(C), necessarily involves a matter of discretion and, thus, is a matter lying within the sound discretion of the trial court." *Id.* " '[A]buse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 32} Here, the Court of Claims found that there was either a good reason for the failure to admit or that the admissions were of no substantial importance. Appellant fails to demonstrate that the Court of Claims abused its discretion by denying the motion. Accordingly, we overrule appellant's fourth assignment of error.

## IV. Conclusion

{¶ 33} Having overruled appellant's second and fourth assignments of error and rendered moot appellant's first and third assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.