GENTRY ET AL., APPELLEES, v. CRAYCRAFT ET AL., APPELLANTS.

[Cite as *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379.]

(No. 2002–2095—Submitted October 22, 2003, at the Clinton
County Session—Decided February 11, 2004.)

---

FRANCIS E. SWEENEY, SR., J.

{¶ 1} On the evening of June 17, 1999, eleven–year–old Christopher Craycraft and nine-year-old Levi Gentry were building a chair in Craycraft's backyard. Levi's younger brother, Lucas Gentry, age four, watched from a distance of about two to three feet away, as the older boys took turns hammering nails into the chair. As Christopher began hammering the final nail, he placed the nail on the wood, and held it as he tapped twice. When the nail stood on its own, Christopher let the nail go and hammered a third time, a little harder than he had previously. The nail flew out of the chair and hit Lucas in the eye, causing him to sustain serious injuries.

{¶ 2} Lucas, by and through his parents, Bonnie and Mike Gentry, plaintiffs-appellees, filed suit against Christopher and his parents, Terry and Nancy Craycraft, defendants-appellants. The complaint alleged that Christopher negligently, intentionally, and/or recklessly hammered the nail into the chair, causing Lucas to sustain injuries.[1]

{¶ 3} The Craycrafts filed a motion for summary judgment, which the trial court granted. Based upon our decision in *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, the court found that neither Christopher nor his parents could be held liable for Lucas's injuries, since the children had been involved in a recreational activity at the time of the accident and because there was no showing that Christopher had acted intentionally or recklessly. The court of appeals affirmed in part and reversed in part and remanded the cause for further proceedings. The court agreed that the boys were involved in a recreational activity, and found that Christopher did not act intentionally or recklessly. Nevertheless, the court concluded that Lucas could pursue a negligence action. It reasoned that Lucas was too young to have assumed the risk of injury and consequently could not be deemed a spectator to a recreational activity.

{¶ 4} The cause is before this court upon the allowance of a discretionary appeal.

{¶ 5} This appeal concerns the standard of care owed to a young child injured in a recreational or sporting activity.

{¶ 6} In *Marchetti v. Kalish,* 53 Ohio St.3d 95, 559 N.E.2d 699, syllabus, we delineated the following standard: "Where individuals engage in recreational or

---

1. The complaint further alleged causes of action for negligent supervision against Christopher's parents and for loss of consortium.

sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d." Id. at syllabus. In the companion case of *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, paragraphs one and two of the syllabus, we reiterated our holding in *Marchetti* and stated that where injuries are sustained in a sporting event, there is no liability for injuries caused by negligent conduct.[2] Id. at paragraph one of the syllabus. In *Thompson*, we included spectators within the scope of the rule. Id. at 104, 559 N.E.2d 705.

{¶ 7} At the time Lucas was injured, the children were involved in typical backyard play, which falls within the definition of a recreational activity. The parties further concede that Christopher did not act intentionally or recklessly in hammering the nail into the chair. Nevertheless, the parties disagree over whether the recreational- or sports-activity exception to liability for negligence applies. Appellants contend that Lucas was a spectator to a recreational activity and that pursuant to our holdings in *Marchetti* and *Thompson*, appellants were entitled to judgment as a matter of law. Appellees, however, argue that these decisions apply only to active participants or to those spectators who are old enough to voluntarily agree to watch and accept the risks associated with the sport or activity. Since Lucas was too young to have appreciated the inherent dangers in the activity, appellees maintain that he cannot be deemed a spectator. Thus, appellees argue that the recreational- or sports-activity exception to liability for negligence does not govern this case. Instead, they urge us to impose a simple negligence standard of liability.

{¶ 8} Contrary to appellees' position, we did not intend to limit *Marchetti* and *Thompson* to active participants or to spectators old enough to appreciate the risks inherent with the sport or activity. In fact, we made it clear that the opposite was true when we stated that the reckless/intentional standard of liability applies regardless of whether the activity was engaged in by children or adults, or was unorganized, supervised, or unsupervised. We recognized that "[t]o hold otherwise would open the floodgates to a myriad of lawsuits involving the backyard games of children." *Marchetti*, 53 Ohio St.3d at 98, 559 N.E.2d 699.

---

2. The underlying facts of *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, involved a thirteen–year–old girl who was injured while playing a game called "kick the can" with neighborhood children in her yard. Since there was no showing of recklessness or intentional conduct on the part of the defendant, we upheld the granting of summary judgment in defendant's favor. In *Thompson*, the plaintiff was a golfer injured by a shanked golf ball. In upholding summary judgment for the defendant, we held that the injury was foreseeable and that there was no duty owed to the plaintiff.

{¶ 9} Moreover, our focus in these decisions was on the conduct or actions of the defendant, not on whether the plaintiff was too young to have assumed the risk of injury. Id. at 99, 559 N.E.2d 699. In fact, in *Marchetti*, we refused to consider the plaintiff's scope of consent because we were fearful that "requiring courts to delve into the minds of children to determine whether they understand the rules of the recreational or sports activity they are engaging in could lead to anomalous results." Id. If we were to accept appellees' position, this is precisely what we would be doing. We would be measuring a defendant's liability based upon the subjective understanding of the young plaintiff. We are unwilling to do this, since the determinative factor in a defendant's liability in sports- and recreational-activity cases is the conduct of the defendant himself, not the participant's or spectator's ability or inability to appreciate the inherent dangers of the activity. See, e.g., *Ramos v. Countryside* (1985), 137 Ill.App.3d 1028, 1031–1032, 92 Ill.Dec. 607, 485 N.E.2d 418.

{¶ 10} Furthermore, in *Marchetti*, we stressed that the underlying policy behind our holding was to "strike a balance between encouraging vigorous and free participation in recreational or sports activities, while ensuring the safety of the players." Id., 53 Ohio St.3d at 99, 559 N.E.2d 699. In finding no liability in these types of cases, we reasoned that spectators as well as participants "must accept from a participant conduct associated with that sport" or activity and that where injuries stem from "conduct that is a foreseeable, customary part" of the activity, the defendant "cannot be held liable for negligence because no duty is owed to protect the victim from that conduct." *Thompson*, 53 Ohio St.3d at 104, 559 N.E.2d 705.

{¶ 11} Obviously, without our stating so, in *Marchetti* and *Thompson* we applied "primary" assumption-of-risk principles in limiting the defendant's liability. Primary assumption of the risk is essentially a principle of no duty, or no negligence. Prosser & Keeton, The Law of Torts (5th Ed.1984) 496, Section 68. It differs from secondary assumption of the risk, which appellees urge us to apply, in that secondary (or implied) assumption of the risk requires a showing that the plaintiff has consented to or acquiesced in an appreciated or known risk. 2 Restatement of the Law 2d, Torts (1965), Section 496C, Comment *b*.

{¶ 12} In limiting a defendant's liability in sports and recreational activities, courts have relied upon primary assumption of the risk and have reasoned that "those entirely ignorant of the risks of a sport, still assume the risk (in this 'primary' sense) by participating in a sport or simply by attending the game. The law simply deems certain risks as accepted by plaintiff regardless of actual knowledge or consent." (Footnotes omitted.) Susan M. Gilles, From Baseball Parks to the Public Arena: Assumption of the Risk in Tort Law and Constitutional Libel Law (2002), 75 Temple L.Rev. 231, 236.

{¶ 13} This is precisely how we approached our prior decisions. We concluded that the plaintiff had assumed the risk by voluntarily participating in the activity or sport and focused on the conduct of the defendant to determine whether he or she had been reckless or had acted intentionally. We continue to adhere to this position today. We hold that in a personal injury action brought for injuries sustained while an individual is a participant in or a spectator at a sport or recreational activity, the age of the participant or spectator and whether he or she was capable of appreciating the inherent risks are immaterial. Instead, recovery is dependent upon whether the defendant's conduct was either reckless or intentional.

{¶ 14} In applying this holding to the case at hand, we find that the children were engaged in typical backyard play, which the lower courts correctly determined to be a recreational activity. The evidence further demonstrates that Christopher acted neither intentionally nor recklessly when the nail he was striking flew out of the wood and hit Lucas in his eye. We also find that Lucas, who stood a few feet away from the defendant and watched as he and the other boys took turns hammering the nails into the chair, was a spectator to a recreational activity. The fact that Lucas was only four years old and may not have understood the inherent risks involved is immaterial. Instead, we find that the trial court properly granted summary judgment in favor of Christopher and his parents, since there was no showing that Lucas's injuries were caused by intentional or reckless conduct.

{¶ 15} Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., dissents.

---

PFEIFER, J., dissenting.

{¶ 16} Dodge ball. Capture the Flag. Red Rover. Freeze Tag. Today the majority makes a strange addition to the list of fondly remembered childhood games: nail hammering. What's next on the list of spectator sports—mowing the lawn, draining the septic tank, or digging a ditch? The simple fact that a child is engaged in something does not necessarily make that activity a sport or a recreational activity. The majority stretches much too far to include the activity of the children in this case within the coverage of *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699; and *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705.

{¶ 17} This is not to say that Christopher Craycraft should be found liable for negligence. Tort law already offers protection for children from being found negligent for doing the things kids do. This court has held:

{¶ 18} "Children are not chargeable with the same care as persons of mature years. Although children are required to exercise ordinary care to avoid the injuries of which they complain, such care, as applied to them, is that degree of care which children of the same age, education, and experience, of ordinary care and prudence, are accustomed to exercise under similar circumstances." *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Grambo* (1921), 103 Ohio St. 471, 134 N.E. 648, paragraph one of the syllabus.

{¶ 19} The protection is even greater for younger children. This court has also held that "[a] child under seven years of age is, as a matter of law, incapable of negligence." *DeLuca v. Bowden* (1975), 42 Ohio St.2d 392, 71 O.O.2d 375, 329 N.E.2d 109, paragraph one of the syllabus.

{¶ 20} Tort law provides enough protection to children without shoehorning every activity involving children within the protections accorded to participants in sporting activities. Moreover, the majority does not limit its nail-hammering defense to children. Would or should the majority have been so quick to recognize nail hammering as a recreational activity had one of Craycraft's parents been doing the hammering? An expanded definition of what constitutes a recreational activity is expansive for everyone, not just children.

---

Dyer, Garofalo, Mann & Schultz, John A. Smalley and Devon A. Stanley, for appellees.

Young & Alexander Co., L.P.A., and Mark R. Chilson, for appellants.