BARAKAT, Appellant, et al.

v.

PORDASH et al., Appellees.

[Cite as *Barakat v. Pordash,* 164 Ohio App.3d 328, 2005-Ohio-6095.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 85931.

Decided Nov. 17, 2005.

Musca & Miralia and Earl F. Ghaster, for plaintiff-appellant.

Christopher J. Moore and Dennis R. Fogarty; and Davis & Young and Keith D. Thomas, for defendants-appellees.

Sean C. Gallagher, Judge.

{¶ 1} Appellant, Gaby Barakat, appeals from the judgment of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of appellees Darrin Pordash and Corporate Martial Arts & Fitness, Inc., d.b.a. the Fitness Edge [1] ("CMAF").[2] For the reasons stated below, we affirm.

---

1. It appears from the record that the Fitness Edge was formerly known as Rocky River Fitness Kickboxing.

2. We note that judgment was also rendered against plaintiff Helen Barakat on her loss-of-consortium claim. This appeal was filed by Gaby Barakat. Helen Barakat has not appealed

{¶ 2} The following facts give rise to this appeal. On March 29, 2000, Pordash was teaching a martial-arts class in sambo at CMAF. At the time, Pordash was a fourth-degree black belt in sambo, which is two degrees below the highest level that can be achieved in the discipline. Barakat attended the class upon the invitation of Pordash. At the time, Barakat had a second-degree black belt in kung fu, and he had a brown belt (which is one step below black belt) in judo.

{¶ 3} Pordash was also a licensed chiropractor. Barakat became a patient of Pordash's after a motor vehicle accident in March 2000. During the course of treatment, Pordash and Barakat had conversations about martial arts.

{¶ 4} When Barakat went to watch Pordash's sambo class on March 29, 2000, he was not a student of the class or of CMAF. However, Barakat volunteered to allow Pordash to place a leg lock on Barakat's left leg.

{¶ 5} Barakat stated in his deposition that while he was in the leg-lock hold, Pordash asked him to try to escape the hold. Barakat indicated that it was impossible to break loose. Nonetheless, Barakat tried to put pressure on Pordash by straightening his leg. Barakat stated that Pordash responded by twisting around him, causing Barakat's whole leg, which was straight, to twist. When this occurred, Barakat heard his left knee pop, and he felt pain. Barakat claims that he suffered a broken ligament as a result of the incident.

{¶ 6} Barakat brought this action against Pordash and CMAF on January 15, 2004. Pordash and CMAF each filed a motion for summary judgment. These motions were granted by the trial court. Barakat has appealed the trial court's ruling and has raised the following assignment of error for our review:

{¶ 7} "The trial court erred in granting summary judgment in favor of appellee [CMAF] and appellee Darrin Pordash.

{¶ 8} "A. The trial court erred by finding, as a matter of law, that appellant assumed the risk."

{¶ 9} This court reviews a trial court's grant of summary judgment de novo. *Ekstrom v. Cuyahoga Cty. Comm. College,* 150 Ohio App.3d 169, 2002-Ohio-6228, 779 N.E.2d 1067. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Dussell v. Lakewood Police Dept.,* 99 Ohio St.3d 299, 300–301, 2003-Ohio-3652, 791 N.E.2d

---

and is not a party hereto. Additionally, the Cincinnati Insurance Companies intervened in the action and is not a party to the appeal.

456, citing *State ex rel. Duganitz v. Ohio Adult Parole Auth.* (1996), 77 Ohio St.3d 190, 191, 672 N.E.2d 654.

{¶ 10} This case involves an injury sustained during a sport or recreational activity. The Supreme Court of Ohio has determined that when an individual is a participant in or a spectator at a sport or recreational activity, the individual assumes the inherent risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either reckless or intentional. *Gentry v. Craycraft,* 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116; *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699; *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705. This rule is premised upon the doctrine of primary assumption of the risk and is based on the rationale that a participant in a sport or recreational activity accepts the inherent risks associated with the sport or activity. *Gentry,* 101 Ohio St.3d at 144, 2004-Ohio-379, 802 N.E.2d 1116.

{¶ 11} In this case, the evidence reflects that Barakat was voluntarily participating in the sambo demonstration when he was injured. However, Barakat claims that reasonable minds could conclude that his injury was not the result of a risk inherent in sambo. Inherent risks are those that are foreseeable and customary risks of the sport or recreational activity. See *Thompson,* 53 Ohio St.3d at 104–106, 559 N.E.2d 705. Thus, a participant who injures another participant in the course of a sporting activity by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence, because no duty is owed to protect the victim from that conduct. Id. at 104, 559 N.E.2d 705.

{¶ 12} Sambo is a high-contact, inherently dangerous sport. Pordash testified that sambo involves throws, strikes, blows, punching, and other techniques. Thus, physical contact to the body is actually encouraged by the sport. We find that being injured in the course of a hold or maneuver is a risk that is a foreseeable and customary risk of the sport.

{¶ 13} Because an inherent risk was involved, recovery is dependent upon whether the defendant's conduct was either reckless or intentional. *Gentry,* 101 Ohio St.3d 141, 802 N.E.2d 1116. In making this determination, a court should consider " 'the nature of the sport involved, the rules and regulations which govern the sport, the customs and practices which are generally accepted and which have evolved with the development of the sport, and the facts and circumstances of the particular case.' " *Thompson,* 53 Ohio St.3d at 105, 559 N.E.2d 705, quoting *Hanson v. Kynast* (1987), 38 Ohio App.3d 58, 64, 526 N.E.2d 327. An example given by the *Thompson* court of reckless behavior was a golf player "who hurls a club into the air in a moment of pique and injures another golfer." *Thompson,* 53 Ohio St.3d at 105, 559 N.E.2d 705.

{¶ 14} We also note that courts have recognized an "'inverse relationship between duty and dangerousness' in sports: 'the standard of care rises as the inherent danger of the sport falls.'" *Levine v. Gross* (1997), 123 Ohio App.3d 326, 330, 704 N.E.2d 262, quoting *Thompson,* 53 Ohio St.3d at 105–106, 559 N.E.2d 705. In *Levine,* the court found that a karate instructor was not reckless as a matter of law in hitting his opponent's left eye with his closed fist in the course of sparring. *Levine,* 123 Ohio App.3d at 331, 704 N.E.2d 262 (recognizing a high degree of dangerousness in karate and a low duty of care).

■ {¶ 15} As discussed above, sambo is a high-contact sport that involves various physical maneuvers. Pordash was demonstrating a move on Barakat when the alleged injury occurred. Pordash testified that when he put Barakat into the leg-lock hold, Barakat straightened his leg to the point that his knee was completely locked out. Pordash claimed that he heard a pop in Barakat's left knee. On the other hand, Barakat testified that the pop occurred when Pordash responded to the pressure of Barakat's straightening of the leg. Regardless of when during the maneuver the alleged injury occurred, the record clearly reflects that it was during a physical maneuver in the course of the hold. We find that the record is devoid of any evidence by which reasonable minds could conclude that Pordash intentionally or recklessly injured Barakat. Accordingly, we conclude that summary judgment was appropriate.

Judgment affirmed.

SWEENEY, P.J., and CALABRESE, J., concur.