[Cite as *Kumar v. Sevastos*, 2021-Ohio-1885.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ZACHARY G. KUMAR, ET AL.,           :

    Plaintiffs-Appellants,           :

                        No. 109795

    v.                               :

CONSTANTINE SEVASTOS, ET AL.,       :

    Defendants-Appellees.            :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 3, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-908930

---

### *Appearances:*

Paulozzi Co. L.P.A., Todd O. Rosenberg and Joseph G. Paulozzi, *for appellant.*

Collins, Roche, Utley & Garner, L.L.C., Ronald J. Ziehm and Jaren B. Webster, *for appellees* Lost Nation Sports Park, L.L.C. and Lost Nation Sports Park.

Law Offices of Craig S. Cobb and Craig S. Cobb, *for appellees* Constantine Sevastos, Constantine Sevastos and Christine A. Sevastos.

EILEEN A. GALLAGHER, J.:

{¶ 1}  Zachary Kumar appeals the judgments of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of Constantine Sevastos, his parents Constantine and Christine Sevastos and Lost Nation Sports Park, L.L.C. Kumar alleged that during a January 2017 indoor soccer game at Lost Nation, Sevastos the younger illegally slide tackled him, causing him to collide with what he claimed was an improperly placed padded boundary wall, as a result of which he sustained injuries.  The trial court found that Kumar's "trip and fall" were within the inherent risks of the game, that Kumar assumed the risks and that Sevastos and his parents were entitled to summary judgment.  The court also found that because the hazard was open and obvious, Lost Nation owed Kumar no duty.  Additionally, the trial court found Kumar's claims against Lost Nation were precluded by his assumption of the risk.  Accordingly, the trial court granted Lost Nation summary judgment.  We affirm.

**Assignments of Error**

{¶ 2}  Kumar asserts two assignments of error:

1. Defendant-Appellee, Lost Nation Sports Park, L.L.C., Is Liable for Defective/Reckless Design Of The Wall Given The Attendant Circumstances Rendering The Wall Unsafe.

2. Primary Assumption Of Risk Does Not Apply To An Illegal Slide-Tackle.

**Background**

{¶ 3}  Kumar began playing soccer when he was approximately three years old, playing both indoors and outdoors.  At the time of his deposition, he was 19

years old and preparing to begin his sophomore year in college after being recruited to play collegiate soccer.

{¶ 4} At the time of his January 2017 injury at Lost Nation, Kumar had been playing indoor soccer for approximately ten years, having played at Lost Nation for "about three or four" of them. Kumar was familiar with Lost Nation. He had played there a "dozen" times. More specifically, Kumar was familiar with the particular boundary wall with which he collided and sustained injury. The wall was padded and located approximately four feet beyond the goal line. Kumar testified that he personally had come into contact with this wall in the past and had observed other players come into contact with it with force sufficient to cause them to hit the ground after collision.

{¶ 5} More generally, Kumar testified that soccer is a physical sport. Players can suffer concussions and surgery-requiring injuries. It is common for players to get kicked and it is common for them collide with both opponents, as well as members of their own team, often in pursuit of the ball. Moreover, players use their own bodies to shield the ball from opponents, further exposing themselves to potential injury. Tripping and falling during gameplay frequently occurs. During his deposition, Kumar could not recall a single game he played since high school where he did not end up on the ground at least once and he agreed it is fair to assume that at some point during a game, every player will end up on the ground for one reason or another.

{¶ 6} Kumar explained that different kinds of tackles occur during gameplay, including slide tackles, agreeing that they are "fairly common" occurrences. He stated that it is "impossible" to avoid physical contact with another player.

{¶ 7} Kumar also testified that a "50-50 ball" occurs where "[t]wo players going at a loose ball" and are "trying to battle, like physically contact each other, to win the ball" and that this situation happens "[a] lot."

{¶ 8} Kumar explained what is meant by shielding:

You — you either try — you just try to shield the ball from the opponent, like with your back facing towards him so he can't get the ball, because if he tries to go through you or anything it's considered a foul.

Kumar agreed that when shielding happens "you're going at a good pace, and the other play is also running all-out." Physical contact is inevitable. Kumar explained that in a game he does this "[a]ll the time."

{¶ 9} Kumar stated that indoor soccer differs from outdoor soccer to the extent that playing indoors involves "probably a little less of the physical aspect" and "a lot less slide tackling." Regarding slide tackling during indoor games, Kumar testified that "we're not allowed to do it much, the refs have yelled at us about it before, I know, I can recall." He confirmed that slide tackling nevertheless does occur during indoor games and, moreover, he has witnessed it happen. More specifically, Kumar stated that he has observed slide tackling during indoor games prior to his January 2017 injury at Lost Nation, including during the very game in which he was hurt.

**{¶ 10}** Kumar was asked whether he read any specific soccer rulebook and he responded that he read "the FIFA, ten laws of the game" "like six, seven years ago." Kumar stated with regard to Lost Nation "I think they limit the slide tackling because of the space of the wall. * * * Like slide tackling is not a big thing there because of the walls. And then, they try to keep it on the safer side, because the area is so tight, just anything that could potentially harm a player they try to keep limited, like compared to outdoor soccer." Kumar made no reference to rules of "Amateur and Youth Indoor Soccer." Kumar stated that he never read the US Indoor Soccer Rules prior to the injury and that he had not read them subsequent to it. He stated that he did read "the original ten laws of FIFA" and that he thought there was one of the laws that pertained to tackling, but didn't know which one, explaining, "I forget."

**{¶ 11}** Kumar confirmed that, before he was injured at Lost Nation, he knew he was playing in close proximity to boundary walls and that he knew they were padded "because of the risk of people running into the walls."

**{¶ 12}** As related more specifically to his injury, Kumar testified that he did not previously know Sevastos and had not played against him. Kumar explained that his injury occurred when the game was tied with approximately two minutes remaining in the game at Lost Nation. Although Kumar generally described that game as "rougher than usual" and stated that there was "a lot of fouls going around" on both sides, prior to the injury, he did not remember having any physical contact with Sevastos. There were no disagreeable words between the two and there was no pushing or shoving. Nevertheless, Kumar recalled during the game observing slide

tackles involving other players in addition to players pushing each other and players getting tripped and falling.

{¶ 13} Kumar explained that in the leadup to his injury he was running towards a loose ball that was between himself and the boundary wall. He attempted to shield the ball and in so doing stepped in front of Sevastos, who was also attempting to get the ball. Kumar stepped into Sevastos' path of travel, putting himself between the ball and Sevastos. Kumar described his recollection of the events leading up to his collision with the boundary and subsequent injury:

> [I]t was a 50-50 ball going to my goalkeeper, and I saw the — one of the opponents, I didn't know who it was exactly, but like running towards him, so I started sprinting back and running, trying to beat him to that 50-50 ball, shield him from my goalkeeper so he could get it safely. But, as I was slowing down, I felt like the side of a — side of a shoe, something, clip my back heel, and then I just stumbled and rammed my head straight into the wall.

{¶ 14} Kumar clarified that he did not stumble into the wall, but rather "went straight into it," carried by his momentum. There was no foul called on the play.

**Summary Judgment Standard**

{¶ 15} This court reviews a trial court's ruling on a motion for summary judgment de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶ 16} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor

of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 17} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. If the nonmoving party fails to meet this burden, summary judgment is appropriate. *Id.*

**Sevastos Summary Judgment**

{¶ 18} It is well-established that a participant in a sport or recreational activity assumes the inherent risks and cannot recover for an injury without showing that the other participant's action was either reckless or intentional. *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116, ¶ 6; *Thompson v. McNeill,* 53 Ohio St.3d 102, 559 N.E.2d 705 (1990); *see also Barakat v. Pordash*, 164 Ohio App.3d 328, 2005-Ohio-6095, 842 N.E.2d 120, ¶ 10 (8th Dist.) ("This rule is premised upon the doctrine of primary assumption of the risk and is based on the rationale that participant in a sport or recreational activity accepts the inherent risks associated with the sport or activity."). "Thus, a participant who injures another participant in the course of a sporting activity by conduct that is a foreseeable,

customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct." *Barakat* at ¶ 11, citing *Thompson* at 104.

**{¶ 19}** In this case, Kumar does not argue that Sevastos intentionally injured him. Instead, he confines his arguments to the claim that Sevastos' action was reckless.

**{¶ 20}** An actor's conduct is "reckless" when "'he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'" *Marchetti v. Kalish*, 53 Ohio St.3d 95, 96, 559 N.E.2d 699 (1990), fn. 2, quoting Restatement of the Law 2d, Torts Section 500 (1965).

**{¶ 21}** "What constitutes an unreasonable risk under the circumstances of a sporting event must be delineated with reference to the way the particular game is played, i.e., the rules and customs that shape the participants' ideas of foreseeable conduct in the course of a game." *Thompson v. McNeill*, 53 Ohio St.3d 102, 105, 559 N.E.2d 705 (1990). In Thompson, the Supreme Court further explained:

> We cannot provide a single list of actions that will give rise to tort liability for recklessness or intentional misconduct in every sport. The issue can be resolved in each case only by recourse to the rules and customs of the game and the facts of the incident. In general * * * the quid pro quo of an "assumed greater risk" is a diminished duty. Thus, participants in bodily contact games such as basketball (and lacrosse)

owe a lesser duty to each other than do golfers and others involved in non-physical contact sports.

Recognition of the inverse relationship between duty and dangerousness should enter into a court's decision-making process on a motion for summary judgment when the plaintiff alleges reckless or intentional misconduct. A court should inquire more specifically into * * * the nature of the sport involved, the rules and regulations which govern the sport, the customs and practices which are generally accepted and which have evolved with the development of the sport, and the facts and circumstances of the particular case.

*Id.*

{¶ 22} This court has previously observed that an "'inverse relationship between duty and dangerousness' exists in sports: 'the standard of care rises as the inherent danger of the sport falls.'" *Barakat v. Pordash*, 164 Ohio App.3d 328, 2005-Ohio-6095, 842 N.E.2d 120, ¶ 14 (8th Dist.), quoting *Levine v. Gross*, 123 Ohio App.3d 326, 330, 704 N.E.2d 262 (9th Dist. 1997). Moreover, multiple courts have determined that soccer is a "high-contact sport." *Draut v. Van As*, 12th Dist. Butler No. CA99-07-131, 2000 Ohio App. LEXIS 2047, at *7 (May 15, 2000), citing *Nganga v. College of Wooster*, 52 Ohio App.3d 70, 72, 557 N.E.2d 152 (9th Dist. 1989), and *Bentley v. Cuyahoga Falls Bd. of Edn.*, 126 Ohio App.3d 186, 190-92, 709 N.E.2d 1241 (9th Dist.1998).

{¶ 23} As previously discussed, Kumar was aware that soccer is a physical sport and he knew that injuries, including serious injuries, could result. Further, as Kumar testified, slide tackling does occur during indoor soccer games. Regardless of whether slide tackling occurs more infrequently during indoor gameplay than it does during outdoor gameplay and, despite a rule proscribing it, it nevertheless

occurs indoors and Kumar was aware of this. Moreover, Kumar observed slide tackling during the game in which he was injured. As such, it was entirely foreseeable that Kumar might get slide tackled. *See Barakat v. Pordash*, 164 Ohio App.3d 328, 2005-Ohio-6095, 842 N.E.2d 120, ¶ 11 (8th Dist.) ("Thus, a participant who injures another participant in the course of a sporting activity by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct.").

**{¶ 24}** Here, as alleged by Kumar, Sevastos "slide tackled [him] in violation of the rules of Amateur and Youth Indoor Soccer." The gravamen of Kumar's claim against Sevastos is that Kumar's slide tackle was reckless because it was the violation of a safety rule.

**{¶ 25}** Assuming this allegation is true, this rule violation,[1] by itself, is an insufficient basis by which to attach liability. *See Draut* at *6, citing *Bentley* at 192 ("Violation of a rule is only one part of the inquiry and a rule violation must be analyzed as to whether such a penalty would be a foreseeable part of the particular sport."). Determining whether recklessness has occurred requires consideration of whether the specific conduct was both within the rules and foreseeable. *Doody v. Evans*, 188 Ohio App.3d 479, 2010-Ohio-3523, 935 N.E.2d 926, ¶ 25 (10th Dist.),

---

[1] We note that although Kumar alleges that slide tackling is barred by a specific indoor rule and that it is a foul when it occurs, he does not allege that it constitutes conduct grave enough to warrant serious consequences like ejection from the current game or suspension from subsequent games. Moreover, we note that Kumar admitted that there was no foul called on Sevastos for his conduct that resulted in Kumar's injury.

quoting *Bentley* at 192 ("Ohio law has not abandoned an inquiry into foreseeability.").

{¶ 26} To prove that Sevastos' rule violation which resulted in Kumar's injury was reckless, Kumar was required to establish that it was not foreseeable. *See Thompson v. McNeill*, 53 Ohio St.3d 102, 105, 559 N.E.2d 705 (1990) ("[A]ny conduct which is characterized by the strong probability of harm that recklessness entails, and which occurs outside the normal conduct and customs of the sport, may give rise to liability."). Kumar failed to do this. Slide tackling during an indoor soccer game is foreseeable. *Compare Doody* at ¶ 35 ("a collision between a base runner and a catcher is simply a foreseeable hazard of the game of softball [regardless of no-collision rule]"); and *Bentley* at 192 ( illegal slide tackle "two seconds after [plaintiff] chipped the ball away and took three running steps" that resulted in serious injury and game ejection was foreseeable), with *Thompson v. McNeill*, 53 Ohio St.3d 102, 105, 559 N.E.2d 705 (1990) ("In the context of the game of golf, a player who hurls a club into the air in a moment of pique and injures another golfer should be held accountable.").

{¶ 27} We find Sevastos is entitled to summary judgment.

**Lost Nation Summary Judgment**

{¶ 28} To establish actionable negligence, a plaintiff must show the existence of a duty, a breach of that duty and resulting proximate injury. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). In the context of a negligence claim, duty is the threshold issue. *See Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-

Ohio-2573, 788 N.E.2d 1088, ¶ 13. Where there is no duty, there can be no negligence.

{¶ 29} Here, there is no dispute that Kumar was an invitee of Lost Nation. An invitee is a person who enters another's property by invitation, express or implied, for a purpose beneficial to the property owner. *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986). The owner owes a duty to "exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition." *Id.*, citing *Presley v. Norwood*, 36 Ohio St.2d 29, 31, 303 N.E.2d 81 (1973); *see also Motes v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97090, 2012-Ohio-928, ¶ 9 ("[I]n the absence of proof that the owner or its agents created the hazard, or that the owner or its agents possessed actual or constructive knowledge of the hazard, no liability may attach.").

{¶ 30} Nevertheless, under the open-and-obvious doctrine, an owner does not owe invitees a duty to warn of dangers that are open and obvious and, when applicable, operates as a complete bar to any negligence claims. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5; *see also Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 1992-Ohio-42, 597 N.E.2d 504 ("[T]he open and obvious nature of the hazard itself serves as a warning."). The open-and-obvious doctrine emphasizes the nature of the dangerous condition itself, rather than the nature of the plaintiff's conduct in encountering it. *Armstrong* at ¶ 13. "[I]t is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id.*

{¶ 31} Here, assuming that the boundary wall with which Kumar collided was a hazard, it was one that was open and obvious. Kumar makes no claim that the wall was somehow not visible or otherwise obscured. To the contrary, Kumar, who was admittedly familiar with Lost Nation, having played there a dozen times prior to the injury, was acutely aware of this particular boundary wall. He previously observed other players collide with the wall and had similarly done so himself. *See Scott v. Harrisburg Petro., L.L.C.*, 10th Dist. Franklin No. 19AP-413, 2020-Ohio-3431, ¶ 7, quoting *Freiburger v. Four Seasons Golf Ctr., L.L.C.*, 10th Dist. Franklin No. 06AP-765, 2007-Ohio-2871, ¶ 11 ("The question is whether the material facts demonstrate 'whether the danger was free from obstruction and readily appreciated by an ordinary person.'"). Because the boundary wall was open and obvious Lost Nation did not owe Kumar any duty and Kumar's claim against Lost Nation is accordingly barred. *See Armstrong* at ¶ 5.

{¶ 32} Kumar argues that the open-and-obvious doctrine does not apply here because of the presence of attendant circumstances, i.e., "the distraction of the slide[ ]tackle" and the boundary wall design and placement. "Attendant circumstances can create an exception to the open and obvious doctrine and render summary judgment inappropriate." *Hatto v. McLaughlin*, 8th Dist. Cuyahoga No. 109307, 2020-Ohio-3374, ¶ 33, quoting *Carter v. Forestview Terrace L.L.C.*, 2016-Ohio-5229, 68 N.E.3d 1284, ¶ 18 (8th Dist.). Attendant circumstances include "'any significant distraction that would divert the attention of a reasonable person in the same situation and thereby reduce the amount of care an ordinary person would

exercise to avoid an otherwise open and obvious hazard.'" *Carter* at ¶ 18, quoting *Haller v. Meijer, Inc.*, 10th Dist. Franklin No. 11AP-290, 2012-Ohio-670, ¶ 10; *see also Strevel v. Fresh Encounter, Inc.*, 4th Dist. Highland No. 15CA5, 2015-Ohio-5004, ¶ 22, quoting *Hudspath, v. Cafaro, Co.*, 11th Dist. Ashtabula No. 2004-A-0073, 2005-Ohio-6911, ¶ 19 ("attendant circumstances include distractions that divert an ordinary person's attention and provide a justifiable reason for the failure to perceive the otherwise open and obvious peril."), *but see Stewart v. AMF Bowling Ctr., Inc.*, 3d Dist. Hancock No. 5-10-16, 2010-Ohio-5671, ¶ 15 ("[A]ttendant circumstances do not include any circumstance existing at the moment of a fall, unless the individual was distracted by an unusual circumstance created by the property owner.").

{¶ 33} Sevastos' slide tackle was not an attendant circumstance that created an exception to the open-and-obvious doctrine. Kumar did not focus his attention on the slide tackle rather than the boundary wall. *See Carter*, at ¶ 18. The slide tackle did not divert Kumar's attention or otherwise cause him to fail to perceive the wall. *See Strevel* at ¶ 22. To the contrary, and as explained by Kumar, he was running towards the wall, attempting to intercept the loose ball when he felt Sevastos "clip the back of [his] heel," which caused him to lose his balance and trip and fall "straight into [the wall]." Sevastos' slide tackle thus did not distract Kumar's attention away from the wall; but rather, it redirected the trajectory of Kumar's body into the wall.

{¶ 34} The padded boundary wall is not an attendant circumstance that created an exception to the open-and-obvious doctrine. There is no evidence that the wall was a distraction that would divert a reasonable person's attention from perceiving an otherwise open and obvious peril. *See Hatto* at ¶ 33. Moreover, there is no indication that Kumar himself was distracted by the wall. To the contrary, as reflected in Kumar's testimony, he was instead focused on preventing his opponent from gaining possession of the loose ball.

{¶ 35} Kumar argues that the wall's "negligent safety design" was an attendant circumstance, claiming that the wall was "designed too close to the field for safety." Even assuming that this claim is true, the facts in this case nevertheless fail to establish that the wall's proximity to the playing field is an attendant circumstance. *See Carter* at ¶ 18, quoting *Haller* at ¶ 10 ("An 'attendant circumstance' is 'any significant distraction that would divert the attention of a reasonable person in the same situation and thereby reduce the amount of care an ordinary person would exercise to avoid an otherwise open and obvious hazard.'").

{¶ 36} Accordingly, summary judgment for Lost Nation is warranted.

{¶ 37} We overrule the assignments of error.

{¶ 38} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
LISA B. FORBES, J., CONCUR