[Cite as *Wolf v. Kaplan*, 2021-Ohio-2447.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MARY ELLEN WOLF,                          :

    Plaintiff-Appellant,              :

                                                         No. 110104

    v.                                :

GREGORY KAPLAN,                           :

    Defendant-Appellee.               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 15, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-913778

---

### *Appearances:*

Weston Hurd L.L.P., Shawn W. Maestle, and Victor T. DiMarco, *for appellant.*

Ritzler, Coughlin & Paglia, Ltd., John A. Rubis, and Chloe C. Deangelis, *for appellee.*

SEAN C. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant Mary Ellen Wolf appeals the decision of the trial court that granted summary judgment in favor of defendant-appellee Gregory Kaplan. Upon review, we affirm the trial court's decision.

**Background**

{¶ 2} On April 10, 2019, Wolf filed a complaint against Kaplan and asserted claims for battery, assault, gross negligence, and negligence. The complaint stems from an accident that occurred during the Cleveland Triathlon that was held on August 11, 2018, in Cleveland, Ohio. This event was the 2018 USA Triathlon Nationals. Wolf and Kaplan were participants in the triathlon competition, which consisted of three segments involving swimming, bicycling, and running. The triathlon was sanctioned by USA Triathlon. Wolf alleges that during the bicycling portion of the triathlon race, Kaplan violated the drafting rules and caused Wolf to crash and sustain physical injuries, including a concussion, a closed fracture of the sacrum, two fractures of the left pubic bone, and multiple abrasions.

{¶ 3} During the course of the proceedings, Kaplan filed a motion for summary judgment that was opposed by Wolf. Evidence in the matter reflected the following.

{¶ 4} Wolf is an experienced triathlete who participated in prior triathlons and had qualified for the USA Triathlon Nationals event. She also had become a certified race director for USA Triathlon. She testified in her deposition that during the Cleveland Triathlon, she completed the swim portion of the triathlon and was

just over a mile into the bicycling portion when the crash occurred. She was rendered unconscious in the accident and has no personal recollection or memory of the incident. She acknowledged the risk of injury involved in participating in a triathlon and was aware that it is an inherently dangerous sport. She also acknowledged that competitors ride at different speeds and it sometimes becomes necessary to pass another competitor on the bike course.

{¶ 5} In becoming a member of USA Triathlon, Wolf electronically signed a Waiver and Release of Liability, Assumption of Risk and Indemnity Agreement, under which she understood and acknowledged that triathlon events, including the running, bicycling, and swimming portions of such events, "are inherently dangerous" and that "participation involves risks and dangers which include, without limitation, the potential for serious bodily injury, * * *; loss of or damage to equipment/property; * * * accidents, contact or collision with other participants * * *." Wolf further understood "that these Risks may be caused in whole or in part by my own actions or inactions, the actions or inactions of others participating in the Event, or the acts, inaction or negligence of the Released Parties," who were defined to include, among others, "other participants in the sanctioned event." Wolf agreed to release "claims for Liability caused in whole or in part by the negligence" of any of the released parties. In her deposition, Wolf admitted reading and signing the waiver and release form.

{¶ 6} Daniel Goldman, who witnessed the accident, testified that a cyclist who was going faster than he was going passed him and then "30 to 100 meters in

front of me, I saw him very close, effectively right behind [Wolf] and passing her on the left, and as he passed her, she fell over, and I'm confident that what I saw was contact; that she didn't just happen to fall over at the time he was passing her because he was so close to her." Although he "did not see the exact contact that was made," he testified "the bike was so close to [Wolf's] bike that it's impossible to think that contact was not made." Goldman also testified that the individual involved in the collision had his name written on the back of his blue triathlon suit and that it was "Kaplan." Goldman stated that he and other participants yelled for Kaplan to stop, but he continued riding. Goldman further indicated that Kaplan was "passing" Wolf and that "when [Kaplan] got behind [Wolf], he was going to pass her fairly quickly." Goldman stated that it did not appear to be a case of "intentional drafting." Rather, it appeared Kaplan was "passing" Wolf in an "unsafe maneuver," and that he was "inadvertently drafting."

{¶ 7} Kaplan maintained during his deposition that he did not have any contact with another participant on the bike course and denied having any knowledge another participant was in an accident. There was no physical evidence to show contact between the bicycles that Kaplan and Wolf were riding. There was no rule requiring Kaplan to stop, and he was not issued a penalty for any rule violation.

{¶ 8} The USA Triathlon Competitive Rules ("Rules") state that they "are intended to provide for the orderly and consistent administration of events sanctioned by USA Triathlon and *are not designed to establish standards of care*

*for the safety of participants or other persons.*" (Emphasis added.) Section 1.2 sets forth the purpose of the rules, which "are designed to set forth a standard set of parameters within which athletes can participate in triathlons and compete in a positive atmosphere of equal opportunity" and are intended, among other purposes, "to promote and maintain sportsmanship, equal opportunity and fair play" and "to protect the health, safety, and well-being of participants[.]"

{¶ 9} Section 5.10 of the Rules sets forth position fouls relating to the bicycling portion of a triathlon event. Per Section 5.10, "a participant is not permitted to position his bicycle in the proximity of another moving vehicle so as to benefit from reduced air resistance." A variable time penalty is to be imposed for any violation of Section 5.10. "Drafting" is generally prohibited such that "while on the cycling course, no participant shall permit his drafting zone to intersect with or remain intersected with the drafting zone of a leading cyclist or that of a motor vehicle." Rules Section 5.10(a). The "drafting zone" is "a rectangular area seven (7) meters long and two (2) meters wide surrounding each bicycle." Rules Section 5.10(b). An exception exists under which "[a] participant may enter [another cyclist's] drafting zone without penalty * * * [w]hen entering the drafting zone from the rear, closing the gap, and overtaking all within no more than 15 seconds." Rule Section 5.10(h)(1). However, when "passing" another cyclist, "[a] participant must not attempt to pass another cyclist unless adequate space is available." Rules Section 5.10(e). Also, with regard to a "right-of-way," the Rules require that "[w]hen taking a position near another participant, however, a cyclist must not crowd the

other participant and shall allow reasonable space for the other participant to make normal movement without making contact." Rules Section 5.10(c). The Rules recognize that a participant may be "overtaken" and that "[w]hen the leading edge of the front wheel of one cyclist passes beyond the front wheel of another cyclist, the second cyclist has been 'overtaken' * * * and [then] bears primary responsibility for avoiding a position foul and must immediately move to the rear and out of the drafting zone of the passing cyclist." Rules Section 5.10(g). Pursuant to Section 5.5 of the Rules, any cyclist who "appears to present a danger to any participant shall be disqualified."

{¶ 10} Upon considering the motions and evidence in the record, the trial court granted Kaplan's motion for summary judgment. The trial court concluded that "the record is devoid of any evidence by which reasonable minds could conclude that defendant intentionally or recklessly injured plaintiff." In granting summary judgment in favor of Kaplan, the trial court cited to this court's decision in *Barakat v. Pordash*, 164 Ohio App.3d 328, 2005-Ohio-6095, 842 N.E.2d 120 (8th Dist.), wherein this court recognized that being injured in the course of a hold or physical maneuver is a risk that is "a foreseeable and customary risk" that is inherent in the martial art sambo, that recovery was dependent upon whether the defendant's conduct was either reckless or intentional, and that summary judgment was warranted when the record clearly showed the injury occurred when the instructor was demonstrating a physical maneuver in the course of a sambo hold. *Id.* at ¶ 12-15.

{¶ 11} Wolf timely filed this appeal.

**Law and Analysis**

{¶ 12} Under her sole assignment of error, Wolf argues the trial court erred in granting summary judgment. She claims the record contains questions of material fact as to whether Kaplan's actions involved reckless and/or intentional conduct that was in violation of the Rules for the triathlon event, which she claims caused the crash and her resulting injuries.

{¶ 13} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3] viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12.

{¶ 14} There is no doubt an unfortunate accident occurred in this case. However, simply because appellant's counsel labels the conduct intentional and reckless does not make it so under the law that is applied to recreational and sport activities. Our review reflects that the alleged conduct was a foreseeable and customary risk of the sport of triathlon, that the doctrine of primary assumption of the risk applies, and that, as a matter of law, the alleged conduct cannot be found intentional or reckless.

{¶ 15} It is well established that a participant in a recreational or sport activity assumes the ordinary risks and cannot recover for an injury without showing that the other participant's action was either reckless or intentional. *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116, ¶ 6, citing *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990), paragraph one of the syllabus*; see also Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990), paragraphs one and two of the syllabus. This limitation is premised upon the doctrine of primary assumption of the risk and is based on the rationale that a participant in a sport or recreational activity assumes the inherent risks associated with the sport or activity. *See Gentry* at ¶ 12. The underlying policy is to "'strike a balance between encouraging vigorous and free participation in recreational or sports activities, while ensuring the safety of the players.'" *Id.* at ¶ 10, quoting *Marchetti* at 99.

{¶ 16} "Thus, a [participant] who injures another [participant] in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct." *Thompson* at 104; *compare Deutsch v. Birk*, 189 Ohio App.3d 129, 2010-Ohio-3564, 937 N.E.2d 638, ¶ 13 (12th Dist.) (finding "the cause of appellant's injury, which was a collision with another cyclist on a bike trail where cyclists ride at speeds in excess of 20 miles per hour, is a foreseeable and customary risk inherent in this sport or recreational activity"), and *Evans v. Wills*, 10th Dist.

Franklin No. 01AP-422, 2001 Ohio App. LEXIS 5878, ¶ 10 (Dec. 27, 2001) ("being struck by a bicycle rider is not a foreseeable or customary risk of walking").

{¶ 17} However, liability may still exist where the conduct is intentional or reckless within the context of a sport or recreational activity. *See Gentry* at syllabus. An actor's conduct is "intentional" when "the actor desires to cause consequences of his act, or [when] he believes that the consequences are substantially certain to result from it.'" *Marchetti* at 96, fn.2, quoting Restatement of the Law 2d, Torts 15, Section 8A (1965). "The conduct of an athlete who intentionally injures another athlete in a way *not authorized or anticipated by the customs and rules of the game* violates the duty not to commit an intentional tort." (Emphasis added.) *Thompson* at 104.

{¶ 18} With regard to recklessness, there are "differences between recklessness as it is usually understood and *recklessness in the context of a sporting event,*" that must be taken into account." (Emphasis added.) *See id.* "A participant in a sporting event is reckless if he does or fails to do an act that it his duty to do, when a reasonable person would know that his conduct (which must be more than negligent) creates a risk of harm that is *unreasonable under the circumstances of the sport.*" (Emphasis added.) *Levine v. Gross*, 123 Ohio App.3d 326, 330, 704 N.E.2d 262 (9th Dist.1997), citing *Thompson* at 104-105. As explained in *Thompson,*

> What constitutes an unreasonable risk under the circumstances of a sporting event must be delineated with reference to the way the particular game is played, i.e., the rules and customs that shape the

participants' ideas of *foreseeable conduct in the course of a game.* * * * But any conduct which is characterized by the strong probability of harm that recklessness entails, and which *occurs outside the normal conduct and customs of the sport*, may give rise to liability.

(Emphasis added.) *Id.* at 105.

{¶ 19} Additionally, courts have recognized that "there is an 'inverse relationship between duty and dangerousness' in sports: 'the standard of care rises as the inherent danger of the sport falls.'" *Levine* at 330, quoting *Thompson*, 53 Ohio St.3d at 105-106, 559 N.E.2d 705. "Recognition of the inverse relationship between duty and dangerousness should enter into a court's decision-making process on a motion for summary judgment when the plaintiff alleges reckless or intentional misconduct." *Thompson* at 105. "A court should inquire more specifically into * * * 'the nature of the sport involved, the rules and regulations which govern the sport, the customs and practices which are generally accepted and which have evolved with the development of the sport, and the facts and circumstances of the particular case.'" *Id.*, quoting *Hanson v. Kynast*, 38 Ohio App.3d 58, 64, 526 N.E.2d 327 (5th Dist.1987) (Milligan, P.J., concurring).

{¶ 20} Wolf improperly construes the law and argues that "where a participant in a sporting event violates the sport's defined or customary rules, that participant's conduct is deemed reckless as a matter of law." However, a violation of the rules of the sport does not amount to "per se reckless conduct" as argued by Wolf and is not the only circumstance that is considered. *See Kumar v. Sevastos*, 8th Dist. Cuyahoga No. 109795, 2021-Ohio-1885, ¶ 25-26. Although the Rules for a

USA Triathlon event are designed, among other purposes, to promote sportsmanship and fair play, as well as to protect the health, safety, and well-being of participants, a violation does not, in itself, render conduct intentional or reckless for liability purposes. When considering intentional conduct, we also consider whether the conduct was not anticipated by the customs and practices of the sport; and when considering reckless conduct, we also consider whether the alleged conduct was foreseeable or occurred outside the normal conduct and customs of the sport. *See Thompson* at 104-105. Additionally, we consider the facts and circumstances of the particular case. *Id.*

{¶ 21} As this court recently recognized, a rule violation in itself is an insufficient basis by which to attach liability because the determination of recklessness also requires consideration of whether the alleged conduct was foreseeable. *Kumar* at ¶ 25, citing *Doody v. Evans*, 188 Ohio App.3d 479, 2010-Ohio-3523, 935 N.E.2d 926, ¶ 25 (10th Dist.). As explained in *Kumar,*

> To prove that [defendant's] rule violation which resulted in Kumar's injury was reckless, Kumar was required to establish that it was not foreseeable. *See Thompson v. McNeill*, 53 Ohio St.3d 102, 105, 559 N.E.2d 705 (1990) ("[A]ny conduct which is characterized by the strong probability of harm that recklessness entails, and which occurs outside the normal conduct and customs of the sport, may give rise to liability."). Kumar failed to do this. Slide tackling during an indoor soccer game is foreseeable. Compare *Doody* at ¶ 35 ("a collision between a base runner and a catcher is simply a foreseeable hazard of the game of softball [regardless of no-collision rule]"); and *Bentley* at 192 (illegal slide tackle "two seconds after [plaintiff] chipped the ball away and took three running steps" that resulted in serious injury and game ejection was foreseeable), with *Thompson v. McNeill*, 53 Ohio St.3d 102, 105, 559 N.E.2d 705 (1990) ("In the context of the game of

golf, a player who hurls a club into the air in a moment of pique and injures another golfer should be held accountable.").

*Kumar* at ¶ 26.

**{¶ 22}** The conduct involved herein is not similar to a player who hurls a bat or club into the air in a fit of anger and injures another player. Rather, it occurred by a competitor who allegedly committed a rule infraction while passing another cyclist to advance his position during the cycling portion of a triathlon competition. Absent evidence that Wolf's injury arose out of conduct that was not truly an intrinsic part of the competitive sport of triathlon, there is no legal liability. *See Doody* at ¶ 33.

**{¶ 23}** Furthermore, this is not a case of a recreational activity under which physical contact might not be anticipated and a greater duty with regard to the safety of others might be imposed. Also, the circumstances of this case are distinguishable from the case of *Huston v. Brookpark Skateland Social Club, Inc.*, 8th Dist. Cuyahoga No. 108222, 2020-Ohio-1493, which is relied on by Wolf and involved an action against a roller-rink operator for failing to stop a skater from skating at dangerous and excessive speeds that were observable by the skating-floor supervisor. Instead, this case is akin to the circumstances in *Kumar* and the cases cited therein, in which the injury resulted from conduct that was anticipated and foreseeable contact occurring within an organized sporting event or competition and for which individual liability may not be imposed.

{¶ 24} In this case, there is no question that triathlon is an inherently dangerous sport and that participation involves foreseeable risks and dangers for serious bodily injury that can arise from accidents, contact, or collision with other participants. The accident occurred during the USA Triathlon Nationals event with other participants competing on the course, some going at speeds of 25 miles per hour. Wolf testified in her deposition to her knowledge of the risk that another participant's bicycle could collide with her bicycle and that she could crash and be injured during the bicycle portion of a triathlon race. The Rules themselves permit passing another participant within the drafting zone and provide for penalties that may be imposed for rule violations, including for contact being made with other participants. Although Kaplan allegedly passed Wolf in an "unsafe maneuver," such conduct is not outside the range of ordinary activity involved in the sport. The USA Triathlon membership waiver form specifically provides that each portion of a triathlon event, including the bicycling portion, is "inherently dangerous" and that participation in a triathlon event involves an associated risk of "serious bodily injury" and "accidents, contact or collision" that might be caused by other participants.[1] These are anticipated and foreseeable dangers associated with the inherent risks of the sport.

---

[1] The release is relevant to the analysis of the inherent risks of the sport of triathlon. We do not address the enforceability of the release, which was not determined by the trial court.

{¶ 25} We are not the first court to recognize that a collision allegedly caused by another participant in an organized bicycle event is not outside the range of ordinary activity involved in the sport:

> Certain activities have been held not to be inherent in a sport and thus not subject to the primary assumption of risk doctrine. For example, drinking alcoholic beverages is not an activity inherent in the sport of skiing. * * * On the other hand, in various sports, going too fast, making sharp turns, not taking certain precautions, or proceeding beyond one's abilities are actions held not to be totally outside the range of ordinary activities involved in those sports. * * *

> The analogies derived from the risks in other sports suggest that one cyclist riding alongside another cyclist and swerving into the latter is a risk that is inherent in a long-distance, recreational group bicycle ride. The release Moser signed warns of the risk of accidents caused by the participants, thus indicating that such accidents are an inherent risk of the activity. If liability attached to entanglements and collisions among 600 bicycle riders, the recreational sport of an organized bicycle ride likely would be adversely affected.

> Ratinoff's movements toward the right side of the road that caused her to collide with Moser may have been negligent, but they were not intentional, wanton or reckless or conduct "totally outside the range of ordinary activity involved in the sport." * * * Therefore, the accident at issue in this case is within the assumed risks of the organized bicycle ride in which Moser and Ratinoff were engaged.

(Internal citations omitted.) *Moser v. Ratinoff*, 105 Cal.App.4th 1211, 1222-1223, 130 Cal.Rptr.2d 198 (2003).

{¶ 26} The same logic may be applied to the bicycling portion of a triathlon event. *See Mark v. Moser*, 746 N.E.2d 410, 423 (Ind.App.2001) (recognizing inherent risk in triathlon is that "it is reasonably foreseeable that a competitor in a cycling race may attempt to cut in front of co-participants in an effort to advance position."). It is not outside of the range of ordinary activity involved in the sport of

triathlon that a participant vying for position on the cycling portion of the course might come into close contact with another participant, collide with another participant, or commit a rule infraction in an effort to advance their position. Such conduct is anticipated by the customs and practices of the sport, is reasonably foreseeable, and presents a risk of injury inherent in the sport. Additionally, there is an absence of evidence demonstrating the injury arose out of conduct that was not truly an intrinsic part of the competitive sport of triathlon.

{¶ 27} We also recognize that free and vigorous participation in the sport of triathlon likely would be adversely affected if liability were imposed under these circumstances. Although we can certainly sympathize with any athlete injured in the course of competition, "there was nothing about the instant collision that is so exceptional that the general rule of separation between sporting event and tort action should be vitiated here." *Doody*, 188 Ohio App.3d 479, 2010-Ohio-3523, 935 N.E.2d 926, at ¶ 33.

{¶ 28} Accordingly, we find as a matter of law that the record fails to demonstrate that Kaplan's alleged conduct was intentional or reckless under the facts and circumstances presented in this case. We need not address other arguments that are presented. We find that summary judgment in favor of Kaplan is warranted on all claims. Wolf's sole assignment of error is overruled.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
LARRY A. JONES, SR., J., CONCUR